B. H. STEPHENS v. MRS. SALLIE M. S. HICKS AND HUSBAND.

(Filed 11 October, 1911.)

1. **Lien—Mechanics and Laborers—Architect's Plans and Specifications—Interpretation of Statutes.**

An architect who furnishes plans and specifications for a building is not a mechanic or laborer within the meaning of the Revisal, sec. 2016, and he has no lien thereon for the same.

2. **Liens—Mechanics and Laborers—Architect's Supervision—Interpretation of Statutes.**

An architect, who has superintended the work upon a building in course of erection, under a contract with the owner to do so, is not entitled to a mechanic's or laborer's lien, as work of this character does not fall within the intent of the statute. Revisal, sec. 2016.

3. **Liens—"Material"—Architects—Plans and Specifications—Interpretation of Statutes.**

Plans and specifications of the architect are not "material" within the meaning of the statute giving a lien for material furnished, etc. Revisal, sec. 2016.

4. **Liens—Mechanics and Laborers—Architect—Married Women—Executory Contracts—Charge Upon Separate Realty.**

The claim of an architect for plans and specifications is not within the intent of Revisal, sec. 2016, giving mechanics and laborers a lien upon the building constructed, etc., and a contract with him to make them is of an executory nature, and hence when the contract or agreement to furnish them is made with a married woman, prior to the act of 1911, ch. 109, without the written consent of her husband, and is not of such character as to charge her separate property, before the passage of the said act, the contract or agreement is not enforcible, and her property is not chargeable. *Finger v. Hunter*, 130 N. C., 529; *Ball v. Paquin*, 140 N. C., 83, cited and distinguished. *Flaum v. Wallace*, 103 N. C., 296, and that line of cases cited and applied.

5. **Married Women—Property Rights Act—Statutes—Prospective—Interpretation of Statutes.**

Chapter 109, Laws of 1911, relating to married women's property rights, provides that a married woman "shall be authorized to contract," meaning thereafter, and that the act "shall be in force from and after its ratification," referring, without express words of retrospection, to future transactions, and is therefore

prospective by its express terms. Retrospective legislation which interferes with the rights of parties to make a contract discussed by WALKER, J.

APPEAL by plaintiff from Peebles, J., at May Term, 1911, of NEW HANOVER.

The facts are sufficiently stated in the opinion of the Court by Mr. Justice Walker.

Kenan & Stacy for plaintiff.
Rountree & Carr for defendant.

WALKER, J. This action is brought by the plaintiff, an architect, against the defendants, Mrs. Sallie M. S. Hicks and her husband, to recover of the feme defendant damages alleged to be due for a breach of contract, by the terms of which the plaintiff agreed to prepare and furnish plans and specifications for an apartment house, to be erected by her, for which he was to receive $700, and was actually paid the sum of $350, and he further agreed to superintend the construction of the building, as her architect, for the sum of $300, which she has prevented him from doing. Plaintiff seeks also to enforce a mechanic's and laborer's lien upon the property. The defendant demurred to the complaint, and plaintiff appealed from the judgment sustaining the demurrer.

Whatever may be law, as declared in other jurisdictions, this Court has thoroughly settled the principle that a mechanic or laborer, within the meaning of our lien laws, is one who performs manual labor—one regularly employed at some hard work, or one who does work that requires little skill, as distinguished from an artisan. Whitaker v. Smith, 81 N. C., 340. In that case Justice Ashe, for the Court, thus explained the lien law of our State by the circumstances which caused its enactment: "A very large proportion of the laboring population of the State had just recently been released from thraldom and thrown upon their own resources, perfectly ignorant of the common business transactions of social life, and this provision of the Constitution, and the acts passed to carry it into effect, were intended to give protection to that class of persons who were totally dependent upon their manual toil for subsistence.

The law was designed exclusively for mechanics and laborers." And it was held that an overseer is not a mechanic or laborer under our lien law, and is not entitled to a lien on the building and premises, where his work is done or labor performed, for the price or value of his services. The case of *Cook v. Ross,* 117 N. C., 193, is quite as much to the point, for there it was held that one who, under a contract, assists the owner of a mill in purchasing machinery and superintends the installation of the same and the repairing of the mill, so as to put it in proper condition for the manufacture of yarns, was in no view justified by our statute, a mechanic or laborer. "He was superintendent of the work which was done," says the Court, "but was in no sense employed as a laborer by the day to do toilsome and manual labor. His business, under the agreement, was not to labor with his hands, but to oversee those who did the work in subjection to his authority." So it has been held that one who acts as bookkeeper in the reconstruction of a building, under a contract with the owner for his services, is not entitled to a lien. *Nash v. Southwick,* 120 N. C., 459. To the same effect is *Moore v. Industrial Co.,* 138 N. C., 304, where it was held that a lien is not given by our Constitution and statute for services rendered, under contract, as superintendent of a milling business, conductor of a commissary or store connected therewith and as bookkeeper in the same concern. This Court, in deciding that case, adopted the definition of the English courts in construing their statute, that a laborer or mechanic is "a servant employed in some manual occupation." It is further said that "the word 'labor,' in legal parlance, has a well-defined, understood and accepted meaning. It implies continued exertion of the more onerous and inferior kind, usually and chiefly consisting in the protracted exertion of muscular force. Labor may be business, but it is not necessarily so, and business is not always labor. In legal significance, labor implies toil, exertion producing weariness; manual exertion of a toilsome nature," citing *Bloom v. Richards,* 2 Ohio State, 387.

It was said in *Cook v. Tramway Co.,* 18 Q. B. Div., 684, in construing the English employer's liability act, that "The

expression used (in that act), it should be noted, is not manual work, but manual labor. Many occupations involve the former, but not the latter; for instance, telegraph clerks, bookkeepers, and all persons engaged in writing." *Morrison v. Mining Co.*, 143 N. C., 250.

The plaintiff, therefore, is entitled to no lien under his contract to superintend the work, even if he had performed this duty, and certainly he cannot be heard to say that he should have a lien for what he did not do. Nor is he entitled to a lien for the building plans and specifications, either upon principle or well-considered authority. The language of the statute is that the mechanic or laborer shall have a lien on the property, real or personal, for work done *on the same*. It could hardly be said with correctness and a proper appreciation of the meaning of well-defined terms, that an architect, in furnishing plans and specifications for the guidance of the contractor and his mechanics and laborers, is engaged in the act of performing labor upon the building. He uses his brain far more than he does his brawn—his trained mental faculties rather than his physical or muscular powers—and herein, to a large extent, is to be found the distinction between men employed in his kind of work and the laborer, who works mechanically, though under his direction.

We are ably and strongly supported in our view of the law by the cases of *Mitchell v. Packard*, 168 Mass., 467, and *Libbey v. Tidden*, 192 Mass., 193. It has been decided also in other jurisdictions that the word "mechanic," as used in the lien laws, does not include an architect or draughtsman. See cases on this question in 5 Words and Phrases, p. 4457, title "Mechanic" and subtitle "Architect or Draughtsman"; a mechanic or laborer (within the meaning of these laws), being a person skilled in the practical use of tools; a workman who shapes and applies material in the building of houses or other structures mentioned in the law; "one actually employed with his own hands in constructive work," or one so engaged in the application of his own labor to such construction as contradistinguished from a superintendent or overseer. 5 Words and Phrases, 4457; *City of New Orleans v. Lagman*, 43 La. Ann.,

244; *S. and C. R. Co. v. Callahan,* 49 Ga., 506; *People v. Board of Aldermen,* 42 N. Y. Supp., 545; *Parkerson v. Wrightmen,* 4 Strob., 363; *Raeder v. Bensberg,* 6 Mo. App., 445; *In re Osborn,* 104 Fed., 780; *Price v. Kirk,* 13 Phila., 497. The authorities are not uniform, but those cited are in line with our decisions.

The learned counsel for the plaintiff did not contend that their client had furnished any material to be used in the construction of the house because he had prepared the plans and specifications, and their position, in this respect, was the correct one. No one would ever think of an architect's building plans and specifications as "material" within the meaning of the statute, Revisal, sec. 2016, and we do not suppose that architects would classify themselves as "mechanics or laborers." One class is of as high dignity as the other in every way, but they are dissociated in our mental conception of the two, and when we think and speak of them they are naturally differentiated as belonging to separate and distinct callings, or avocations, though held in the same estimation, so far as the worthiness of the pursuit is concerned.

We conclude that the architect was not in the mind of the Legislature when it was providing for the lien of mechanics, laborers, and material-men, not being considered as in the same category and as requiring the same protection. They can secure themselves in advance against the danger of loss, or at least have a freer hand than the daily laborer, who is often entirely dependent upon his wages for support and maintenance of himself and family, and sometimes at the mercy of an impecunious or dishonest debtor, with whom he is not on equal terms. He occupies more a position of dependence, if not helplessness, than does the architect. Every consideration of fairness and justice favors him, and for this reason were his interests safeguarded by the law, under whose special care and protection he has been taken.

Another question remains for decision. If there is no lien, it follows that we have only an unsecured and executory contract of a married woman, which is not enforcible against her, according to our decisions. The cases of *Finger v. Hunter,*

130 N. C., 529, and *Ball v. Paquin,* 140 N. C., 83, are not in point. In *Finger v. Hunter* we held that the act of 1901, ch. 617 (Revisal, sec. 2016), giving a laborer's lien on the real property of a married woman for work done on her building and for material furnished, was constitutional and valid, and in *Ball v. Paquin* we held that the plaintiff acquired a lien for work done and material furnished for the construction of a dwelling on a married woman's land, under a written contract with her and her husband, which was duly proved, as to both, with her privy examination. In both cases there were liens, while in this case there is none, and it is therefore governed by *Flaum v. Wallace,* 103 N. C., 296; *Weir v. Page,* 109 N. C., 220; *Thompson v. Taylor,* 110 N. C., 70; *Weathers v. Borders*, 124 N. C., 610; *Harvey v. Johnson,* 133 N. C., 353, and the recent case of *Kearney v. Vann,* 154 N. C., 311, in which *Justice Allen* learnedly considers the question.

The contract in this case was made before the passage of the act of 1911, ch. 109, and is, therefore, not governed by it. When it was made, the law declared such contracts to be void, which means, of course, that it is the same as if the contract had never been made at all. That which is void, or a nullity, can have had no legal existence or binding obligation, and if the act of 1911 had professed to be retroactive in its operation and to emancipate married women as to all past, as well as future, contracts, it would have been an unauthorized exercise of legislative power under the Constitution. It may do many things with reference to contracts, but it cannot make a contract between parties, because a contract implies volition and the agreement of two or more minds to one and the same thing; in other words, consent. The Legislature can no more make a contract for parties without their consent than it can take away a vested right or impair the obligation of a contract already made.

This case is not like *Springs v. Scott,* 132 N. C., 548; *Anderson v. Wilkins,* 142 N. C., 159, and other decisions of a like kind, in which the Legislature was dealing with the remedy and with contingent and not vested interests. Parties are entitled to contract according to their free will. They make

contracts for themselves and not by legislative compulsion. The freedom of the right to contract has been universally considered as guaranteed to every citizen. However this may be, we find that the act of 1911 is not retrospective, but prospective, by its very terms; and so the question does not arise as to the power of the Legislature to declare valid a married woman's contract made prior to the act of validation. The language of the act is that a married woman "shall be authorized to contract," which means thereafter, and further, that the act "shall be in force from and after its ratification," which necessarily, and without express words of retrospection, refers to future transactions. Even in a doubtful case, it should be construed as prospective. We would defeat the legislative intent and make the law, should we decide otherwise. This Court said in *S. v. Littlefield,* 93 N. C., 615: "Such a construction would be giving a retrospective operation to the act, which is in violation of the general rule that 'no statute should have a retrospective effect.' Although the words of the statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may hereafter arise, unless a contrary intention is unequivocally expressed therein. Potter's Dwarris, p. 162, note 9, and cases cited. There is nothing in the act tending to show an intention in the Legislature to make it retrospective, but on the other hand, from the use of the term *original jurisdiction,* it would seem that it was intended that the indictments for such offenses as the inferior court *then* had jurisdiction of should thereafter be *originated* in that court, and that was what was meant by the use of the word 'original' in the statute."

The demurrer was properly sustained.

Affirmed.