WILBUR SMITH AND ASSOCIATES, INC., A CORPORATION V. SOUTH MOUNTAIN PROPERTIES, INC., A CORPORATION; DIVERSIFIED MORTGAGE INVESTORS, A MASSACHUSETTS BUSINESS TRUST; AND THOMAS M. STARNES, TRUSTEE

No. 7525SC869

(Filed 19 May 1976)

Laborers' and Materialmen's Liens § 1— planning and consulting services — improper subject of lien

In an action to recover an amount due for planning and consulting services rendered by plaintiff and for a judgment declaring said indebtedness a first lien on defendant's property, plaintiff's professional services which were furnished between 1 September 1972 and 9 October 1974 were not covered by the lien law in force at the time, though since 1 July 1975 services of the type furnished by plaintiff are covered by the N. C. lien law. G.S. 44A-7(1).

APPEAL by plaintiff from Ervin, Judge. Judgment entered 28 August 1975 in Superior Court, BURKE County. Heard in the Court of Appeals 17 February 1976.

Plaintiff is an engineering and consulting firm with offices in Columbia, South Carolina. Defendant South Mountain Properties, Inc. (South Mountain), is a real estate development company with properties situate in Burke County, North Carolina. In early summer 1972 defendant South Mountain began to acquire options on certain acreage in Burke County for commercial development and construction of a totally planned resort community. On 1 September 1972 plaintiff entered into contract with South Mountain for planning, design, and consulting services incident this development.

In the fall of 1972 plaintiff, through its agents and employees, began working on the development site. Crews operating

under plaintiff's control and direction surveyed some 2,500 acres of up-country mountain land and subsequently staked out more than 3,400 individual lot sites for residential and commercial use. Plaintiff also conducted extensive subsurface analysis to evaluate soil and water quality preparatory to the design and construction of a motel, various clubhouses, a golf course, lake and water treatment complex.

While plaintiff received $924,492.51 for work done, as of 31 August 1974 South Mountain was still indebted to plaintiff in the amount of $247,518.27. On 11 October 1974 plaintiff caused a notice of claim of lien to be filed with the Clerk of Burke County Superior Court. A civil action was commenced on 17 October 1974 by filing of a complaint wherein plaintiff sought to recover the balance due it and a judgment declaring said indebtedness a first lien on South Mountain's property. Defendants Diversified Mortgage Investors (DMI) and Thomas M. Starnes as trustee, were joined as parties defendant and an amended complaint was filed 23 October 1974.

Defendants answered, contending plaintiff's professional services did not give rise to a lienable claim under the North Carolina Lien Law, Chapter 44A of the General Statutes; and that South Mountain did not become the lawful owner of the property until 8 December 1972 at which time deeds of trust in the amounts of $2,000,000.00 and $12,000,000.00 respectively were given to defendant DMI as purchase money mortgages or deeds of trust. A counterclaim was asserted by defendant South Mountain, contending that as a result of plaintiff's negligence and dereliction, contruction of a lake, designed and located by plaintiff, had become impossible, resulting in damage to South Mountain in the amount of $2,000,000.00.

The cause came on for hearing on defendants' motion for partial summary judgment. The trial judge considered the pleadings, various exhibits, and affidavits, and found them to establish the following:

"1. That no genuine issue as to any material facts exists with respect to the claim of lien sought to be perfected by the plaintiff and that the defendants are entitled to summary judgment, as a matter of law, declaring said claim of lien invalid and unenforceable for the reason that the professional services provided to the defendant, South Mountain Properties, Inc., by the plaintiff were not of the

kind and nature giving rise to the lawful attachment of a lien under and pursuant to the provisions of Chapter 44A of the North Carolina General Statutes; and,

"2. That the deeds of trust from South Mountain Properties, Inc. to Thomas M. Starnes, Trustee, and Diversified Mortgage Investors were purchase money deeds of trust to the extent of One Million, Three Hundred Forty-eight Thousand, Six Hundred and Fifty Dollars ($1,348,650.00) and, even if the claim of lien asserted by the plaintiff are valid and enforceable, it would be secondary and subordinate to the first lien of said deeds of trust in the aforesaid amount of One Million, Three Hundred Forty-eight Thousand, Six Hundred Fifty Dollars. ($1,348,650.00).

On the basis of said findings, the court allowed defendants' motion for partial summary judgment, discharged plaintiff's claim of lien for the reason that it was without lawful force or effect, and dismissed the action as to defendants DMI and Starnes, trustee. The court concluded that plaintiff's claim for debt against South Mountain, and South Mountain's counterclaim, should be determined in a trial of the cause. By an amendment to the judgment, filed 24 February 1976, the court determined that with respect to the partial summary judgment there was no just reason for delay. Plaintiff appealed.

*Whitesides and Robinson, by Henry M. Whitesides, for plaintiff appellant.*

*Patton, Starnes, Thompson & Daniel, P.A., by Thomas M. Starnes, for defendant appellees.*

BRITT, Judge.

Did the trial court err in allowing defendants' motion for partial summary judgment? We hold that it did not.

North Carolina's Lien Law is mandated by Article X, Section 3, of our State Constitution which states that "The General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject matter of their labor."

From 1869 until 1969 our lien law mandated by the Constitution was substantially unchanged and from 1901 until 1969

provided as follows: "Every building built, rebuilt, repaired or improved, together with the necessary lots on which such building is situated, and every lot, farm or vessel, or any kind of property, real or personal, not herein enumerated, shall be subject to a lien for payment of all debts contracted for work done on the same, or material furnished." *See* G.S. 44-1 (1966 Replacement).

In applying and construing said law prior to the effective date of changes made by the 1969 General Assembly, our Supreme Court consistently held that no lien for labor arose under the statute except for actual *labor* performed in the physical improvement of the property.

In *Whitaker v. Smith*, 81 N.C. 340 (1879), the court held that an overseer was not entitled to a lien where the work performed by him was supervisory.

In *Cook v. Ross*, 117 N.C. 193, 23 S.E. 252 (1895), the court held that the plaintiff, who was employed under a *per diem* contract to assist in purchasing machinery, superintending the installation and erection of the machine, and making repairs in a factory necessary to make it operative, was not entitled to a lien.

In *Nash v. Southwick*, 120 N.C. 459, 27 S.E. 127 (1896), the court held that plaintiff, who was employed on a fixed salary as a clerk and bookkeeper in connection with the repair and renovation of a hotel, was not entitled to a lien.

In *Moore v. American Industrial Company*, 138 N.C. 304, 50 S.E. 687 (1905), the court held that plaintiff, as superintendent of manufacturing operations and the general conduct of the business of defendant company, was not a laborer entitled to a lien.

In *Stephens v. Hicks*, 156 N.C. 239, 72 S.E. 313 (1911), the court held that plaintiff, an architect employed to prepare and furnish plans and specifications for the erection of an apartment house, was not entitled to a lien. In the opinion, page 240, we find: "Whatever may be law, as declared in other jurisdictions, this Court has thoroughly settled the principle that a mechanic or laborer, within the meaning of our lien laws, is one who performs manual labor—one regularly employed at some hard work, or one who does work that requires little skill, as distinguished from an artisan. . . . "

Smith and Associates v. Properties, Inc.

In the contract between plaintiff and South Mountain, plaintiff is referred to as a "consultant" who would render "professional services," particularly in the area of *planning* and *engineering*. In view of the cases above mentioned, and particularly *Stephens*, we see no way that plaintiff could have qualified for a lien under the law existing through 1969. We then consider the effect of subsequent legislative changes in the law.

Chapter 1112 of the 1969 Session Laws, effective 1 January 1970, repealed G.S. 44-1 quoted above, and amended G.S. Chapter 44A to include the following:

"Sec. 44A-7. *Definitions.* Unless the context otherwise requires in this Article:

(1) 'Improve' means to build, erect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill or landscape any real property, or to construct driveways and private roadways, or to furnish materials, including trees and shrubbery, for any of such purposes, or to perform any labor upon such improvements.

(2) 'Improvement' means all or any part of any building, structure, erection, alteration, demolition, excavation, clearing, grading, filling, or landscaping, including trees and shrubbery, driveways, and private roadways, on real property.

(3) 'Real property' means the real estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon.

(4) An 'owner' is a person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made. 'Owner' includes successors in interest of the owner and agents of the owner acting within their authority.

"Sec. 44A-8. *Mechanics', laborers' and materialmen's lien; persons entitled to lien.* Any person who performs or furnishes labor or furnishes materials pursuant to a contract, either express or implied, with the owner of real property, for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts

owing for labor done or material furnished pursuant to such contract."

While the 1969 amendments enlarged our lien law, in our opinion the enlargement was not sufficient to include the services rendered by plaintiff. In the definition of "improve" provided by the new statutes, no term specifically covers any of the eighteen types of service enumerated in plaintiff's claim of lien and complaint. The new G.S. 44A-8 uses the term "labor" in the place of "work" as contained in repealed G.S. 44-1, but we do not think the difference in terms is sufficient to include the type of service performed by plaintiff.

The 1975 General Assembly, S.L. Ch. 715, amended G.S. 44A-7(1) by adding the following language: " . . . and shall also mean and include any design or other professional or skilled services furnished by architects, engineers, land surveyers and landscape architects registered under Chapter 83, 89 or 89A of the General Statutes."

At the same time, the General Assembly amended G.S. 44A-8 by adding persons who perform or furnish "professional design or surveying services" to those entitled to a lien. The 1975 amendments became effective 1 July 1975.

It would appear that since 1 July 1975 services of the type furnished by plaintiff are covered by our lien law. The services which are the subject of this action were furnished between 1 September 1972 and 9 October 1974. Defendant argues that the enactment of the 1975 amendments indicates that the General Assembly did not intend prior to that time that the type of services rendered by plaintiff would be covered by our lien law. Plaintiff argues that this is not necessarily true.

In *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E. 2d 481, 483 (1968), we find: "In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it. 82 C.J.S. *Statutes* § 384, p. 897 (1953). The presumption is that the legislature 'intended to change the original act by creating a new right or withdrawing any existing one.' 1 Sutherland, Statutory Construction § 1930 (Horack, 3d ed. 1943). . . . "

In our opinion the 1975 amendments created a *new* right in those who perform or furnish professional design or surveying

services. Since plaintiff's services were furnished prior to their effective date, the 1975 amendments do not help plaintiff.

In view of our holding that the services furnished by plaintiff were not covered by the lien law in force at the time the services were furnished, we do not reach the question whether the deeds of trust to defendant Starnes, trustee, were purchase money deeds of trust.

Our holding in this case is in accord with our holding in *Loddie D. Bryan, Jr. v. Projects, Inc.,* et al (No. 7510SC860, Filed 19 May 1976).

For the reasons stated, the judgment appealed from is

Affirmed.

Judges HEDRICK and MARTIN concur.