INTERSTATE EQUIPMENT COMPANY v. C. CHRISTOPHER SMITH, RECEIVER FOR BOLLINGER CONSTRUCTION COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND NELLO L. TEER COMPANY (INC.)

No. 56

(Filed 10 May 1977)

1. Principal and Surety § 10— contractor's bond — intended beneficiaries — action against surety

The intended beneficiaries of a contractor's or subcontractor's bond may maintain an action against the surety on the bond.

2. Principal and Surety § 10— contractor's bond — notice charged to surety

A compensated surety on a contractor's bond must be charged with notice of its principal's plant, equipment and financial integrity, and the surety is further charged with notice of the contract between its principal and the contractor.

3. Principal and Surety § 10— payment bond for "labor and materials" — equipment rental payments covered

Where a highway construction contract obligated the subcontractor to furnish all labor and materials, including equipment, which were necessary to perform the contract properly and further obligated the subcontractor to pay all indebtedness arising from its operations on the highway project, and the payment bond provided by the subcontractor covered "payment to all persons supplying labor and material," rental payments for equipment constituted an indebtedness for labor and materials for which the surety could be held liable.

4. Principal and Surety § 10— highway construction bond — no "private bond"

A highway subcontractor's payment bond covering "labor and materials" is not treated as a "private bond" covering only those items expressly included in the bond, since the machines in question were used to construct a public road; payment bonds are construed liberally for the protection of those who furnish labor and materials in the prosecution of public works; and the differences between "public" and "private" bonds which the surety urges are artificial and not supported by the contract and bond in this case.

Equipment Co. v. Smith

**5. Principal and Surety § 10— payment bond for "labor and materials" — leased equipment repair — tire use charge — liability of surety**

     Surety on a highway subcontractor's payment bond which covered "labor and materials" could be held liable for repairs to leased machinery, in excess of ordinary wear and tear, and for "abnormal" tire wear, as provided in the lease agreement between plaintiff and the subcontractor; however, it is impossible to tell from the record whether plaintiff was entitled to the amounts claimed for repairs and tire adjustments since it was not clear whether the repairs were necessitated by the subcontractor's use of the machinery on the road construction project or whether the repairs were necessitated by ordinary wear and tear; there was insufficient evidence to show that the tire wear was "abnormal" or in excess of ordinary tire wear; and there was no evidence of any agreement by the subcontractor to be bound by the determination of Carolina Tire on the issue of abnormal tire wear as contended by plaintiff.

**6. Interest § 2; Contracts § 29.5— breach of contract — allowable interest**

     Plaintiff lessor was not entitled to collect "service charges" computed at the rate of 1½ % per month on the outstanding balance of the rental account where there was no provision in the lease permitting a service charge, and there was no evidence tending to show that the lease was modified by the parties to provide for such; however, plaintiff was entitled to recover the legal rate of interest from the date on which each rental payment became due, until such amounts were paid. G.S. 24-1.

     Justice HUSKINS took no part in the consideration or decision of this case.

     ON petition for discretionary review of the decision of the Court of Appeals, reported in 31 N.C. App. 351, 229 S.E. 2d 241, affirming summary judgment entered by *Collier, J.,* on 5 February 1976, IREDELL Superior Court, in favor of defendant Great American Insurance Company.

     The facts of this case are not seriously in dispute. On 17 April 1974, defendant Bollinger Construction Company (Bollinger) entered into a contract with Nello L. Teer Company (Teer) under which Bollinger was to perform certain excavation work on a highway project in Bland County, Virginia. Teer was not the prime contractor on this job, but was a subcontractor. The contract between Bollinger and Teer, portions of which will be set forth in the opinion, required that Bollinger furnish Teer a satisfactory payment bond.

On 29 April 1974, Bollinger entered into a payment bond agreement with Great American Insurance Company (Great American). The bond provided, *inter alia,* that:

"WHEREAS the Principal [Bollinger] and the Obligee [Teer] have entered into a written contract, hereinafter called the Contract, a copy of which is or may be attached hereto, dated the 17th day of April, 1974, for

EXCAVATION SUBCONTRACT, VA. HIGHWAY, CONTRACT

No. 0077-010-102, P402, P403, BLAND COUNTY, VIRGINIA

Now, therefore, the condition of the foregoing obligation is such that if the Principal shall well and truly perform and promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and in all duly authorized modifications of said contract that may hereafter be made, then this obligation shall be void, otherwise it shall remain in force."

In an agreement dated 23 May 1974, plaintiff, Interstate Equipment Company (Interstate), leased to Bollinger for six months two "Model 229G Wabco Scrapers." The rental fee was $3000 per month per machine. In the lease agreement, Bollinger agreed to pay for all repairs and damages to the machinery, normal wear and tear excepted, and to pay for any abnormal tire wear. In a letter dated 22 May 1974 from Interstate to Bollinger, it was stated: "It is also agreed that if there is excessive tire wear, that we will have Carolina Tire look at the tires and we will both abide by their decision."

The two Wabco scrapers were taken to Bland County, Virginia, and used by Bollinger in the performance of its contract with Teer. The machines remained at the Bland County job site at least through 23 November 1975—the expiration of the six-month lease period.

On 23 June 1975, Interstate brought this action to recover: (a) the unpaid balance under the lease agreement, plus applicable North Carolina taxes; (b) certain amounts alleged to be due for damages and repairs to the machinery; (c) charges for excessive tire wear as determined by Carolina Tire Company; and (d) interest at the rate of 1.5% per month on the unpaid balance of the lease.

Interstate voluntarily dismissed Teer from the action and obtained summary judgment against the receiver of Bollinger —who was properly substituted as a party to this action. Both Interstate and Great American moved for summary judgment. After a hearing on the motions, the trial court entered summary judgment in favor of Great American dismissing the action. This judgment was affirmed by the Court of Appeals. We granted Interstate's petition for discretionary review.

*Raymer, Lewis, Eisele & Patterson by Douglas G. Eisele for plaintiff appellant.*

*Haywood, Denny & Miller by John C. Martin for Great American Insurance Company, defendant appellee.*

MOORE, Justice.

Great American, as surety, contends that it cannot be held liable for the amounts alleged to be due Interstate from the principal Bollinger for rental payments, repairs, tire adjustments and interest, for the reason that the amounts claimed to be due are not "labor and materials" under the condition of its bond with Bollinger.

[1]   It has long been established that a third party, for whose benefit a contract has been made, may maintain an action for breach of that contract. *See, e.g., Products Corp. v. Sanders,* 264 N.C. 234, 141 S.E. 2d 329 (1965) ; *Gorrell v. Water Supply Co.,* 124 N.C. 328, 32 S.E. 720 (1899). This principle also applies to the intended beneficiaries of a contractor's or subcontractor's bond, and such a beneficiary may maintain an action against the surety on the bond. *Glass Co. v. Fidelity Co.,* 193 N.C. 769, 138 S.E. 143 (1927). The bond executed between Bollinger and Great American was a payment bond for the protection of those supplying labor and materials to Bollinger. Interstate, occupying the position of one who has supplied labor and materials to Bollinger, is an intended beneficiary of the bond agreement and may maintain this action against the surety.

In *Overman v. Indemnity Co.,* 199 N.C. 736, 155 S.E. 730 (1930), Mulligan Construction Company entered into a contract with the State Highway Commission to build a road. Mulligan executed a bond which was conditioned upon Mulligan's paying all persons furnishing labor and materials "for which the

contractor is liable." The surety argued that the clause "for which the contractor is liable" limited its obligation on the bond to the labor and materials for which the contractor was directly responsible, thus excluding all claims by those persons who had supplied labor and materials to the subcontractors. In rejecting this argument, the Court held that the obligation of a bond must be read in conjunction with the contract which the bond was given to secure. Further, the extent of the surety's obligations is ordinarily measured by the terms of the principal's agreement. Thus, since the contract between Mulligan and the State Highway Commission provided that all persons furnishing labor and materials in the construction of the roadway would be paid, the surety was properly held liable for claims against the subcontractors. *See also Dixon v. Horne,* 180 N.C. 585, 105 S.E. 270 (1920) ; *Fidelity and Casualty Co. v. Copenhaver Contracting Co.,* 165 S.E. 528 (Va. 1932). Accordingly, this Court should construe the surety's liability in conjunction with the contract underlying the bond.

In determining the extent of a surety's obligation, we are guided by the statement of Chief Justice Stacy in *Wiseman v. Lacy,* 193 N.C. 751, 753, 138 S.E. 121, 123 (1927) :

"The principle to be deduced from these and other like decisions is that such bonds are construed liberally for the protection of those who furnish labor and materials in the prosecution of public works *(Electric Co. v. Deposit Co.,* 191 N.C. 653), and it is not thought that the surety can complain at such holding, or that any hardship is imposed thereby, because in entering into the contract the surety is chargeable with notice, not only of the financial ability and integrity of the contractor, but also with notice as to whether he possesses the plant, equipment, and tools required in undertaking the particular work, or will be compelled to rent and hire the same, or some part thereof, all of which matters are factors to be considered in determining the risk, and upon which the surety fixes the premiums exacted for executing the bond. *Sherman v. Amer. Surety Co.,* 173 Pac. (Cal.), 161." *See also Owsley v. Henderson,* 228 N.C. 224, 45 S.E. 2d 263 (1947).

In *Wiseman v. Lacy, supra,* plaintiffs leased to the contractor a steam shovel and a boiler which were used by the contractor in the construction of the road in question. On appeal,

the contractor's surety resisted liability on the ground that a bond conditioned upon the payment of all claims for "labor and material" would not cover rental payments for equipment. In rejecting this contention, the Court held:

> "The renting of the machines in question was but the substitution of mechanical power for manual labor. *Taylor v. Connett*, 277 Fed., 945; *Bricker v. Rollins & Jarecki*, 173 Pac. (Cal.), 592; *Hansen v. Remer*, 200 N.W. (Minn.), 839; *Multnomah County v. U.S.F. and G. Co.*, 180 Pac. (Ore.), 104." 193 N.C. at 752, 138 S.E. at 122.

In *United Bonding Insurance Co. v. M. D. Moody and Sons, Inc.*, 213 So. 2d 263 (Fla. App. 1968), Moody leased road building equipment to a subcontractor which was bonded by United, as surety. Upon default of the subcontractor, Moody instituted action against the subcontractor and its surety. The surety contended that rental payments for equipment were not covered by a bond obligating the surety to pay for "labor and materials." The court held that rental payments were covered by such a bond since "[t]he fair rental value of equipment so furnished is as much incorporated in the job as the sweat of a laborer's brow or the concrete from a supplier's mixer." 213 So. 2d at 264. In reaching this conclusion, the court reasoned that a surety is chargeable with notice of the extent of its principal's plant and equipment, and of the principal's capability of performing the contract. *See also United Bonding Ins. Co. v. Donaldson Engineering, Inc.*, 222 So. 2d 447 (Fla. App. 1969); *C. S. Luck and Sons v. Boatwright*, 162 S.E. 53 (Va. 1932).

[2] We find the reasoning of the above cited cases to be persuasive. A compensated surety is not a ward of the court and it must be charged with notice of its principal's plant, equipment and financial integrity. The surety is further charged with notice of the contract between its principal and the contractor. This is particularly true in the case at bar, wherein the bond states: "WHEREAS the Principal [Bollinger] and the Obligee [Teer] have entered into a written contract . . . dated the 17th day of April 1974. . . . "

[3]  In the case at bar, the contract between Bollinger and Teer, in part, provided:

> "You [Bollinger] will finance your operations in every detail and promptly, or upon demand, pay all indebtedness arising out of your operations hereunder. . . .

> \*    \*    \*

> "You are to furnish us satisfactory Payment bond being in the full amount of this subcontract.

> " . . . You shall have available the necessary workmen and equipment so as to be ready to begin work immediately following our direction to do so. . . .

> \*    \*    \*

> "You will furnish all supervision, labor and materials, including equipment and incidentals, to do properly the items of work listed below at the designated unit prices and in accordance with the contract, plans, specifications, special provisions and directions of our representative who is in charge of the project."

The contract in present case obligated Bollinger to furnish all labor and materials, including equipment, which were necessary to properly perform the contract. It further obligated Bollinger to pay all indebtedness arising from its operations on the Bland County project. Reading the bond in conjunction with the contract, we are of the opinion that the rental payments constitute an indebtedness for labor and materials for which Great American may be held liable as surety.

[4]  Great American contends, however, that the bond in present case is a "private bond" and therefore only those items expressly included in the bond should be covered. In support of this conclusion, Great American cites 17 Am. Jur. 2d, Contractors' Bonds § 7 (1964), which states that the costs of renting equipment are not covered by a "private" bond agreement guaranteeing payment for labor and materials. This proposition is supported by *Great American Ins. Co. v. Busby,* 150 So. 2d 131 (Miss. 1963), and *Western Cas. and Sur. Co. v. Stribling Bros. Mach. Co.,* 139 So. 2d 838 (Miss. 1962). To the contrary, in *Annot.,* 77 A.L.R. 21, 51 (1932), which thoroughly analyzes the cases on point, the author states: "[T]here is little or no distinction between public and private contractor's bonds, as

regards the rights of laborers and materialmen." *See also Standard Oil Co. v. National Surety Co.,* 29 S.W. 2d 29 (Ky. 1930) ; *Ochs v. M. J. Carnahan Co.,* 76 N.E. 788 (Ind. 1906).

We see no valid reason to follow the law of Mississippi or to construe the language of the bond in present case any differently than if the bond were "public." The machines in question were used to construct a public road. As stated by Chief Justice Stacy in *Wiseman v. Lacy, supra,* at 753, 138 S.E. at 123: "[S]uch bonds are construed liberally for the protection of those who furnish labor and materials in the prosecution of public works." Further, the reasoning in *Wiseman v. Lacy, supra,* has been adopted by our General Assembly for bonds required on public contracts by enacting G.S. 44A-25(5) which, in part, provides: " 'Labor or materials' shall include . . . rental of equipment or the reasonable value of the use of equipment directly utilized in the performance of the work called for in the construction contract."

The differences between "public" and "private" bonds which Great American urges upon this Court are artificial and not supported by the contract and bond in this case. By the bond, Great American unquestionably agreed to pay all persons supplying labor and materials to the Bland County construction project. Great American had notice, either actual or constructive, of the equipment, capability, and financial condition of its principal, Bollinger. Great American also had notice of the fact that there was a contract between Bollinger and Teer, and had the opportunity to ascertain the extent of Bollinger's obligations arising from that contract. These are all factors which the surety could consider in evaluating the risk associated with writing the bond and in establishing the premium to be paid therefor. In addition, the surety could have declined to write the bond. However, upon voluntarily deciding to execute the bond, Great American became liable according to the law of this jurisdiction, just as any other compensated surety— regardless of whether the project was "public" or "private."

From the record before this Court, it is established that Interstate's claim for rental payments represents the charges for the period during which the two Wabco scrapers were used on the Bland County project. Under the law of this jurisdiction, these rental payments were covered by the bond on which Great American was surety. Accordingly, the trial court erred

in denying Interstate's motion for summary judgment, and in granting Great American's motion to dismiss. Thus, we hold that Interstate is entitled to recover the balance due on the lease of the two Wabco scrapers, plus the applicable North Carolina sales taxes.

[5] Interstate further alleges that certain amounts representing charges for repairs upon the machinery and charges for excessive tire wear should be recoverable under the bond. The lease agreement entered into between Interstate and Bollinger provided:

> "5. The lessee agrees to maintain said machinery and equipment in the same condition as when delivered to it by the lessor, usual wear and tear excepted . . . and to pay for all damages to the equipment, except the usual and ordinary wear and tear, during the life of this contract, and to return said property in as good condition as when received. . . . If the leased equipment or any part thereof has rubber tires, the lessee agrees to maintain said tires in the same condition as when delivered to it by the lessor, usual wear and tear excepted. Lessee will be liable for additional charges for abnormal cuts, wear, sections and reinforcements of said tires.

*     *     *

> "10. In the event of accident to, or breakage of, any part of the equipment lessee may have the same repaired by any competent person, firm or corporation at its own expense or, upon notice to the lessor as to such breakage or accident, the lessor may repair said machinery for the lessee . . . and the lessee agrees to pay the lessor its regular charges for any material or labor furnished in making said repairs. . . . "

In their briefs and at oral argument, Interstate and Great American contend that the resolution of this issue involves whether a surety's bond may be construed to cover the labor and materials used to repair equipment used by the contractor. *See Annot.*, 67 A.L.R. 1232 (1930). *See also Nelson v. Hagen*, 146 N.W. 2d 873 (N.D. 1966); *Carpenter v. Susi*, 121 A. 2d 336 (Maine 1956). Because of the contractual language quoted above and the provisions contained in the bond, we do not deem it necessary to decide this issue as contended by the parties.

Rather, we are of the opinion that the claims of Interstate for repairs to the machinery, in excess of ordinary wear and tear, and for "abnormal" tire wear are as much a part of the lease agreement on which Great American is surety as are the rental payments. Accordingly, Great American may be held liable for these charges.

From the record, we are unable to determine whether Interstate is entitled to recover the amounts alleged to be due for repairs and tire adjustments. It is well settled that "the coverage of the bond is limited to the obligation arising under the particular contract." *Carpenter v. Susi,* *supra* at 340. However, it is not clear from the record whether the repairs were necessitated by Bollinger's use of the scrapers on the Bland County job, or whether the repairs were necessitated by ordinary wear and tear. Further, there is insufficient evidence presently before this Court to show that the tire wear was "abnormal" or in excess of ordinary wear. Finally, we are unable to locate in the record any agreement on the part of Bollinger to be bound by the determination of Carolina Tire on the issue of abnormal tire wear. Accordingly, we remand this case for a determination of these issues and the amount of damages, if any, Interstate is entitled to recover therefor.

[6] In addition to the amounts claimed to be due for rentals, repairs and tire adjustments, Interstate seeks to collect amounts which were assessed as "Service Charges." These amounts were computed at the rate of 1½% per month on the outstanding balance of the rental account.

We are of the opinion that Interstate is not entitled to recover the amounts alleged to be due as "Service Charges." The lease between Bollinger and Interstate provided (in boldfaced type) : "Both lessor and lessee agree that no modification of this agreement shall be binding upon them or either of them, unless such modification shall be in writing and duly accepted in writing." There is no provision in the lease permitting an assessment of interest or a service charge of 1½% per month upon any outstanding balance, and there is no evidence in the record tending to show that the lease was modified to provide for such. *See Clement v. Clement,* 230 N.C. 636, 55 S.E. 2d 459 (1949) ; *Bell v. Brown,* 227 N.C. 319, 42 S.E. 2d 92 (1947).

The trend in North Carolina is, however, toward allowing interest in almost all cases involving breach of contract, *Rose*

*v. Materials Co.,* 282 N.C. 643, 194 S.E. 2d 521 (1973), and where the amount of damages can be ascertained from the contract, interest is allowed from the date of the breach. G.S. 24-5; *Rose v. Materials Co., supra; General Metals v. Manufacturing Co.,* 259 N.C. 709, 131 S.E. 2d 360 (1963); *Bond v. Cotton Mills,* 166 N.C. 20, 81 S.E. 936 (1914). In the absence of an agreement, the injured party is entitled to interest at the legal rate of six percent. G.S. 24-1; *Rose v. Materials Co., supra.* Accordingly, since there is no evidence before the Court that there was an agreement providing for interest or a modification to provide therefor, Interstate is entitled to recover the legal rate of interest from the date on which each rental payment became due, until such amounts are paid.

For the reasons stated, the decision of the Court of Appeals is reversed. The case is remanded to that court with direction that it be remanded to the Superior Court of Iredell County for further proceedings in accordance with this opinion.

Reversed and remanded.

Justice HUSKINS took no part in the consideration or decision of this case.