SOUTHEASTERN STEEL ERECTORS, INC. v. INCO, INC.

No. 919SC807

(Filed 5 January 1993)

**1. Liens § 32 (NCI4th)— crane rental—lessor not third tier subcontractor—not labor or materials—no Ch. 44A lien**

The lessor of a crane for use by a second tier subcontractor on "various jobs" was not entitled to an N.C.G.S. Ch. 44A lien on a construction project for which the crane was used because (1) the lessor was not acting as a third tier

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

subcontractor within the meaning of N.C.G.S. § 44A-175, and (2) the rental agreement did not constitute the furnishing of labor or materials. N.C.G.S. Ch. 44A, Art. 2.

**Am Jur 2d, Mechanics Liens §§ 49, 81, 99, 103, 104.**

**Labor in examination, repair or servicing of fixtures, machinery, or attachments in building as supporting a mechanics' lien, or as extending time for filing such a lien. 51 ALR3d 1087.**

2. **Liens § 32 (NCI4th)— crane rental—repairs to crane—no Ch. 44A lien**

The lessor of a crane for use by a second tier subcontractor on "various jobs" was not entitled to an N.C.G.S. Ch. 44A lien on a construction project for repairs made on the crane while it was at the project site.

**Am Jur 2d, Mechanics Liens §§ 49, 81, 99, 103, 104.**

**Labor in examination, repair or servicing of fixtures, machinery, or attachments in building as supporting a mechanics' lien, or as extending time for filing such a lien. 51 ALR3d 1087.**

Appeal by defendant from judgment entered 29 May 1991 by Judge Robert Farmer in Vance County Superior Court. Heard in the Court of Appeals 14 September 1992.

*Browning, Sams, Hill, and Hilburn, by Stanley M. Sams, for plaintiff-appellee.*

*Fields & Cooper, by John S. Williford, Jr., for defendant-appellant.*

WYNN, Judge.

Southeastern Steel Erectors, Inc. ("Southeastern") was the second tier subcontractor at a job site owned by the Iams Company ("Iams"). On April 30, 1990, Southeastern entered into an equipment rental agreement with Inco, Inc. ("Inco") for a twenty-five ton Link-Belt crane. The agreement stated that Southeastern intended to use the crane at "various jobs" and it also contained an option for Southeastern to purchase the crane at the end of the six month lease term. Inco provided no operator for the crane, but did on two occasions go to the Iams site to make repairs, which repairs were not a part of the rental agreement.

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

Disputes arose between Southeastern and Inco regarding the condition of the crane and each party's responsibility under the agreement. This caused Southeastern to stop payment on a check already issued for rental payments, to refrain from making any further monthly payments, and to return the crane to Inco. Inco requested payment from Southeastern for the value of the equipment rental agreement plus the cost of repairs. When Southeastern refused to make such payment, Inco, claiming the rights of a third tier subcontractor, served a notice of claim of lien on Iams as owner of the real property, the general contractor, first tier subcontractor, and Southeastern as second tier subcontractor. Subsequently, Inco filed a claim of lien on the real property, pursuant to North Carolina General Statute Chapter 44A, with the Clerk of Superior Court of Vance County and thereafter filed a suit in Edgecombe County to enforce its subcontractor notice of claim of lien rights and its claim of lien rights under Chapter 44A of the North Carolina General Statutes.

Plaintiff-appellee Southeastern brought an action for a declaratory judgment "that [Inco's] Notice of Claim of Lien of Third Tier Subcontractor . . . is not valid, and that [Inco] is not entitled to a lien pursuant to Chapter 44A of the N.C. General. Statutes." Southeastern's subsequent Motion for Summary Judgment was granted, the Superior Court finding that Inco's Notice of Claim of Lien of Third Tier Subcontractor was, in fact, invalid and Inco was not entitled to a lien on the Iams property pursuant to Chapter 44A. It is from this order for summary judgment that Inco appeals.

I.

[1] Summary judgment is properly granted where there is no triable issue of fact so that the moving party is entitled to judgment as a matter of law. *Mace v. Lawyers Title Ins. Corp.*, 48 N.C. App. 297, 302, 269 S.E.2d 191, 194 (1980). North Carolina General Statute, Chapter 44A, Article 2, provides that "[a] third tier subcontractor who furnished *labor or materials* at the site of the improvement shall be entitled to a lien upon funds which are owed to the second tier subcontractor" and may also be subrogated to the rights of the second and first tier subcontractors to obtain a lien on the real property involved. N.C. Gen. Stat. § 44A-18(3) (1989) (emphasis added). *See also Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 403 S.E.2d 291 (1991). In order to be able to claim a lien, Inco must show that it is a third tier subcontractor

and that it furnished labor or materials for the improvement of the Iams real property. Thus, we are confronted with two initial issues in this case: (1) Did Inco act as a third tier subcontractor within the meaning of Article 2, and (2) If so, did its rental of the crane to Southeastern constitute a "furnishing of labor or materials for the improvement of real property" within the scope of the statute.

A third tier subcontractor is defined as "a person who contracts with a second tier subcontractor to improve real property." N.C. Gen. Stat. § 44A-17(5). Clearly, Southeastern is a second tier subcontractor. The rental agreement between Southeastern and Inco, however, is a simple contract regarding the use of the crane. The record indicates that Inco knew Southeastern intended to use the crane on various projects, and that the rental was not for the improvement of any *specific* property. Because Inco did not contract with Southeastern to improve real property, but rather to provide a crane, we conclude that Inco was not acting as a third tier subcontractor within the meaning of the statute.

However, even assuming *arguendo* that Inco did act as a third tier subcontractor, it is not entitled to a lien on the Iams property because the rental agreement does not constitute the furnishing of labor or materials.

Article 2 of Chapter 44A provides no definition for the term "labor or materials" and there has been no North Carolina case up to now that has addressed this specific issue. There is, however, North Carolina case law addressing more generally the scope of "labor or materials" as used in Article 2, the statutory provisions of Article 3 of Chapter 44A, and case law from other jurisdictions addressing this particular issue. We discuss each of these in turn, and conclude that the rental of equipment is not within the scope of "labor or materials" in Article 2 of Chapter 44A.

A. North Carolina Consideration of Labor and Materials

This Court has recognized that the primary purpose of a lien statute is "to protect laborers and materialmen who expend their labor and materials upon the buildings of others." *Carolina Bldrs. Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 233-34, 324 S.E.2d 626, 632, *disc. rev. denied*, 313 N.C. 597, 330 S.E.2d 606 (1985) (quoting *Lemire v. McCollum*, 425 P.2d 755, 759 (Or. 1967)). The lien statute is remedial in nature and, therefore, should

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

be liberally construed to advance the legislature's intent. *Id.* at 229, 324 S.E.2d at 632; *Wilmington Shipyard v. North Carolina State Highway Comm'n*, 6 N.C. App. 649, 651, 171 S.E.2d 222, 224 (1969). No statute, however, should be construed so liberally as to give it a meaning never intended by the legislature.

Section 44A-18 is found in Part 2 of Article 2 in Chapter 44A. Part 2 governs the liens of mechanics, materialmen and laborers dealing with someone other than the owner of the improved property, *i.e.,* subcontractors. Part 1 of the Article, which includes section 44A-8, governs the liens of those dealing directly with the owner. A key concept in both sections is the furnishing of labor or materials. Much of the case law construing the terms labor and materials have focused on 44A-8, but nonetheless govern the meaning of the same terms in 44A-18.

The concept of "labor" as used in the lien statute has evolved considerably through both case law and amendments to the statute. This Court has previously examined that evolution in *Wilbur Smith and Associates, Inc. v. South Mountain Properties, Inc.,* 29 N.C. App. 447, 224 S.E.2d 692, *disc. rev. denied,* 290 N.C. 552, 226 S.E.2d 514 (1976). Prior to a 1969 amendment to the statute, only "actual labor performed in the physical improvement of the property" was sufficient to warrant a lien against that property. *Id.* at 450, 224 S.E.2d at 694 (emphasis omitted). This meant that only manual, unskilled labor was lienable, and that skilled craftsmen, architects, bookkeepers or supervisors were not entitled to liens for their contributions to the improvements made at a construction site. *Id.* (citing *Whitaker v. Smith,* 81 N.C. 340 (1879); *Cook v. Ross,* 117 N.C. 193, 23 S.E. 252 (1895); *Nash v. Southwick,* 120 N.C. 459, 27 S.E. 127 (1897); *Moore v. American Industrial Company,* 138 N.C. 304, 50 S.E. 687 (1905); *Stephens v. Hicks,* 156 N.C. 239, 72 S.E. 313 (1911)).

In 1969 the definition of "improve" was added to the statute and provided the following:

"Improve" means to build, erect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill or landscape any real property, or to construct driveways and private roadways, or to furnish materials, including trees and shrubbery, for any of such purposes, or to perform any labor upon such improvements.

N.C. Gen. Stat. § 44A-7. At the same time, section 44A-8 was added to replace section 44-1, the former lien statute. Section 44A-8 provided that "[a]ny person who performs or furnishes labor or furnishes materials pursuant to a contract, either express or implied, with the owner of real property, for the making of an improvement thereon shall . . . have a lien on such real property . . . ." Section 44-1 had provided that "[e]very building built, rebuilt, repaired or improved, together with the necessary lots on which such building is situated, and every lot, farm or vessel, or any kind of property, real or personal, not herein enumerated, shall be subject to a lien for payment of all debts contracted for work done on the same, or material furnished." The statute was amended again in 1975 to provide that " 'improve' . . . shall also mean and include any design or other professional or skilled services furnished by architects, engineers, land surveyors and landscape architects" and also expanded section 44A-8 to include those who perform or furnish professional design or surveying services. It is apparent that "labor" and "improve" contemplate actual work done by the person claiming a lien, whether that person be a manual laborer, supervisor, or skilled professional, which *directly* impacted on the real property in question. Providing rental equipment is an *indirect* means of aiding in the improvement of real property, and therefore does not constitute furnishing labor.

The rules of statutory construction confirm that "providing rental equipment" is not equivalent to "furnishing labor." Because it is not explicitly defined in Article 2, "labor" must be given its "common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202-03 (1974). The dictionary definition of "labor" is an "expenditure of physical or mental effort, esp. when fatiguing, difficult or compulsory, [or] human activity that produces the goods or provides the services in demand in an economy." *Webster's Third New International Dictionary* (1968) [hereinafter Webster's]. This common definition precludes extending "labor" to include the rental equipment at issue here. This Court has recognized that the common meaning of "furnish" is "to supply, provide, or equip, for accomplishment of a particular purpose." *Queensboro Steel Corp. v. East Coast Machine & Iron Works*, 82 N.C. App. 182, 185-86, 346 S.E.2d 248, 250, *disc. rev. denied*, 318 N.C. 508, 349 S.E.2d 865 (1986). The use of the phrase "furnished labor," then, contemplates providing one with the manpower to do a job. It does not, therefore, include renting equipment.

Applying the above statutory construction analysis to "material" we conclude also that providing rental equipment does not constitute furnishing material. The common meaning of the word material is simply "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made." *Webster's.* This Court, in *Raleigh Paint and Wallpaper Co. v. Peacock & Associates, Inc.,* 38 N.C. App. 144, 247 S.E.2d 728 (1978), *disc. rev. denied,* 296 N.C. 415, 251 S.E.2d 470 (1979), recognized that "[t]he requirement of furnishing material at the site provides *visible* notice to subsequent lienors and encumbrances of the priority of suppliers of material." *Id.* at 148, 247 S.E.2d at 731 (emphasis added). "The test of whether a placement is sufficiently visible is whether a person is able, in the exercise of reasonable diligence, to *see that materials have been placed at the site.*" *Id.* at 148, 247 S.E.2d at 731-32 (emphasis added). It is clear that by using the word "material," considered in the context of the definitions of "improve" and "improvement," the legislature contemplated something that is capable of becoming a part of the real property. Thus the rental equipment is not a material furnished by Inco for the improvement of real property.

B. North Carolina Bond Cases, Article 3 of Chapter 44A

Article 3 of Chapter 44A, which governs Performance Bonds, specifically provides that for the purposes of Article 3 " '[l]abor or materials' shall include all materials furnished or labor performed in the prosecution of the work called for by the construction contract . . . and further shall include . . . rental of equipment . . . directly utilized in the performance of the work . . . ." N.C. Gen. Stat. § 44A-25 (1989). Thus far, the legislature has not included any such definition in Article 2 and we, therefore, decline to apply the Article 3 definition to the provisions in Article 2.

Despite the difference between the two articles, appellant asserts that the reasoning of *Interstate Equipment Co. v. Smith,* 292 N.C. 592, 234 S.E.2d 599 (1977), which involved a bond contract between plaintiff and defendant to guarantee payment of a construction contract between plaintiff and a third party, is persuasive in its holding that rental equipment is included within "labor or materials" for Article 2 purposes. Our Supreme Court in that case quoted the language of *Wiseman v. Lacy,* 193 N.C. 751, 752, 138 S.E. 121, 122 (1927) in determining that " '[t]he renting of the machines

in question was but the substitution of mechanical power for manual labor,'" and as such should be included in the term "labor and material" as found in the bond document involved. *Interstate Equipment*, 292 N.C. at 597, 234 S.E.2d at 602. It is this concept that was codified when the legislature chose to include rental equipment in its Article 3 definition of "labor or materials." Because the legislature has not chosen to codify the same concept in Article 2, we do not find that the reasoning in *Wiseman* and *Interstate Equipment* controls the subject case.

Moreover, the suretyship relationship is unique and as such precludes our construing the legislature's action in Article 3 as being meant also for Article 2. "[S]uretyship creates a tripartite relationship between and among the party secured (the bond obligee), the principal (the bond obligor), and the party secondarily liable (the surety)." B.C. Hart, *Bad Faith Litigation Against Sureties*, 24 Tort and Ins. L. J. 18 (1988). The surety's duty arises at the time the bond is issued. In entering a contract to execute a bond, "the surety is [therefore] chargeable with notice . . . as to whether [the contractor] possesses the plant, equipment, and tools required in undertaking the particular work, or will be compelled to rent and hire the same, or some part thereof, all of which matters are factors . . . upon which the surety fixes the premiums exacted for executing the bond." *Interstate Equipment*, 292 N.C. at 596, 234 S.E.2d at 601 (citations omitted). The surety expressly promises to pay that for which the principal is responsible. By contrast, the owner of the construction site does not bear any responsibility to a subcontractor until the subcontractor files a claim of lien against the property or against the funds owed to others on the site because of said subcontractor's failure to be paid for work done or materials furnished at the site. The owner is not charged with the same degree of notice as the surety is, and has no reason to inquire as to whether the equipment used by the general contractor and subcontractors is owned by them or leased from another. We, therefore, conclude that a surety is held to a higher degree of knowledge of the contracts entered into by its principal than the owner of real property is with respect to contracts entered into by their subcontractors. As such, it was logical for the legislature to include rental equipment in its definition of Article 3 for the purposes of the bond cases, but it would be equally illogical for us to read such a definition into Article 2.

C. Other Jurisdictions

Other jurisdictions have directly addressed the issue of whether rental equipment should be included in the term "labor or materials." The prevailing view appears to be that, absent a specific statutory provision stating otherwise, rental equipment is *not* "labor or materials." *Logan Equipment Corp. v. Profile Constr. Co.*, 585 A.2d 73 (R.I. 1991); *Giles and Ransome, Inc. v. First Nat'l Realty Corp.*, 208 A.2d 582 (Md. App. 1965); *Lembke Constr. Co. v. J.D. Coggins Co.*, 382 P.2d 983 (N.M. 1963); *Wilkinson v. Pacific Mid-West Oil Co.*, 107 P.2d 726 (Kan. 1940); *Steele & Lebby v. Flynn-Sullivan Co.*, 54 S.W.2d 325 (Ky. 1932). These jurisdictions reason that when such equipment is hired out it becomes the equipment of the lessee, a part of his plant, and is used by the lessee as though it were his own. *See, e.g., Lembke*, 382 P.2d at 987. In so renting the equipment, the lessor does not perform labor that contributes to the improvement of the real property, and so is not entitled to a lien against that property. *Id.* They also appear to recognize that the plain meaning of the lien statutes necessitates "actual[ ] participat[ion] in the work done . . . something more than taking the equipment to the site of the job, keeping it in running order while it was there, and removing it when the grading was completed." *See, e.g., Giles and Ransome*, 208 A.2d at 584 (recognizing an exception to the general rule where the lessor provides not only the equipment but also someone to operate the equipment). This reasoning is consistent with our characterization of the legislature's intent in using the word "labor," and we, therefore, conclude that in North Carolina, absent a specific statutory provision to the contrary, rental equipment is not included in the term "labor or materials."

Those jurisdictions which recognize rental equipment as labor adopt reasoning similar to that expressed in the North Carolina bond cases, *Wiseman v. Lacy* and *Interstate Equipment Co. v. Smith,* both discussed *supra.* While we recognize that the construction industry is changing and the traditional supply of manual labor is being rapidly replaced by machinery, we believe it is up to the legislature, and not this Court, to make corresponding changes in the statutes. Until our legislature indicates otherwise, then, we conclude that rental equipment is not "labor" under Article 2 of North Carolina's lien statute.

The prevailing view of other jurisdictions appears also to be that rental equipment is not a "material" furnished for the improve-

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

ment of real property. *See, e.g., Logan*, 585 A.2d at 74 (asserting that Tennessee is alone in its classification of rental equipment as materials); *Air Service Co. v. Cosmo Investments, Inc.*, 155 S.E.2d 413, 414 (Ga. App. 1967); *Chesebro-Whitman Co. v. Edenboro Apartments, Inc.*, 207 A.2d 186 (N.J. Super. 1965). These cases instead equate the rental of equipment with the purchase of equipment. They reason that if such equipment is not totally depreciated by its use on the real property in question it is equivalent to the purchase of the equipment. As the purchase of equipment to be used at a job site is not lienable, these courts reason that neither should the rental of equipment be lienable.

The minority view on the issue of whether rental of equipment is a "material" furnished, as asserted by the Tennessee Supreme Court in *R.L. Harris, Inc. v. Cincinnati, New Orleans, and Texas Pacific Railway Co.*, 280 S.W.2d 800 (Tenn. 1955), holds that the rental was "necessarily consumed in the carrying on of the contract work." 280 S.W.2d at 802. The court further stated that such equipment was " 'not a part of the regular equipment of the contractor, but was engaged for the particular and special use' " in one specific job. *Id.* (citations omitted). The court further noted that the rental equipment was not purchased, but its use for a particular purpose was purchased, which use was consumed on the job and was thus lienable as a material furnished. This analysis, however, is inconsistent with what we have recognized, *supra*, as the North Carolina legislature's conception of the term material being something concrete that is capable of becoming a part of an improvement made to real property.

We conclude first that Inco was not a third tier subcontractor within the meaning of Article 2. Assuming for the sake of argument, however, that Inco was acting as a third tier subcontractor, we further conclude that the use of the term "labor or materials" in Article 2 of Chapter 44A does not encompass rental equipment. The history of the cases examining "labor" and "materials" supports such a conclusion, as does our recognition that, despite its addition of a definition of "labor or materials" expressly including rental equipment to Article 3, the legislature chose to make no such addition to Article 2. In so concluding, we adopt the prevailing view on this issue from other jurisdictions, which we believe is consistent with our direction. We, therefore, overrule appellant's first assignment of error and hold that the general lease of this

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

crane is not a lienable item pursuant to Article 2 of North Carolina General Statute Chapter 44A.

## II.

[2] Appellant asserts, in its second and final assignment of error, that the repairs made by Inco on the crane, while it was at the Iams site, are a lienable item pursuant to Article 2 of Chapter 44A. We disagree. To hold that the rental of equipment in this case will not give rise to a lien on the real property composing the Iams site and then to subsequently hold that the repairs made to that equipment *will* give rise to such a lien is illogical.

The statute allows a third tier subcontractor to realize a lien on funds arising out of the improvement on which the third tier subcontractor worked or for which it furnished materials. N.C. Gen. Stat. § 44A-18(3). Clearly, this statute contemplates work or materials *directly* effecting the real property.

Appellant once again points us to a bond case in an effort to support its contention that the repairs in question are within the scope of the statute. Even were we to agree with appellant that such cases are relevant to the subject case, we cannot agree that the repairs in question constitute a lienable item. *Continental Casualty Co. v. Clarence L. Boyd Co.*, 140 F.2d 115 (10th Cir. 1944), upon which the appellant relies, states that repairs made solely to compensate for wear and tear on the equipment, and which do not add substantially to the value of the equipment, are within the scope of the payment bond. *Id.* at 116. The court also stated, however, that those repairs done in order to make the equipment available for other jobs are not within the scope of the bond. *Id.* It is this latter characterization that most closely reflects the repairs done by Inco.

For the foregoing reasons, the decision of the trial court is,

Affirmed.

Chief Judge HEDRICK and Judge LEWIS concur.