MARSHALL, J.
This is an action to establish a mechanic’s lien.
The petition is in two counts. The first count alleges that the Gratiot Brick & Quarry Company bought of the plaintiff hard bricks to the amount of $1,000; that said bricks were furnished for and used in the construction of a one and two-story brick and frame structure, containing clay sheds, brick kilns, press, machine and boiler house and appurtenances, known as a brick plant, erected on certain real estate described,comprising seven contiguous lots; that the fee simple title to the real estate was in the Gratiot Brick & Quarry Company at the dates of furnishing said materials; that on the 28th day of February, 1896, the Gratiot Brick & Quarry Company executed a certain deed of trust to Robert P. Williams, trustee for the American Exchange Bank, on these lots and other lots; that prior to these events, on the 10th day of May, 1893, Daniel McAllister and J. G. Hardy, who at that time owned said premises, executed a deed of trust on the same to Robert W. Frank, trustee for Albert J. Erank, securing an indebtedness therein described, which said indebtedness is now .owned by defendant, O. Herman Beckman; that a general voluntary assignment was made by the Gratiot Brick & Quarry Company to defendant John G. Parrish, on the 28th of February, 1896; that the said bricks were furnished continuously from the 6th of August, 1895, to the 29th *510 of August, 1895, when the demand accrued; that plaintiff filed its lien account on the 25tfi of February, 1896; tbat no part of said account bas been paid.
The second count alleges tbat on tbe 31st of July, 1895, plaintiff contracted to furnish for tbe defendant, Gratiot Brick & Quarry Company, for tbe sum of $5,000, a six-mold press brick machine complete upon foundations; tbat said press should be able to make 30,000 good bricks per day of ten hours. Tbe plaintiff furnished said machine for tbe one and two-story brick and frame structure heretofore described, and situated upon tbe same premises; tbat said machine was furnished by plaintiff and accepted by defendant on September 24, 1895, and became a part of said frame and brick structure at said date; tbat there bad been paid, in tbe shape of stock, $2,000 on tbe purchase price of said machine; tbat tbe balance, $3,000, is still due and unpaid; tbat tbe lien account was filed on tbe 25th of February, 1896.
Gratiot Brick & Quarry Company made default. Defendants Robert P. Williams, trustee, American Exchange Bank, Robert W. Frank, trustee, and J. G. Parrish, assignee, answered admitting tbat tbe title to tbe premises in question was as stated in tbe petition and admitting tbe transfers as alleged in tbe petition, but denying all tbe other facts.
Tbe trial developed these facts: Prior to August 5th, 1895, one McAllister owned lots 5 to 21 inclusive in City Block 4777 of tbe city of St. Louis, and bad commenced tbe construction of a dry pressed brick plant thereon, tbe buildings needed therefor resting on parts of lots 11, 12,13, 14,15, 16, and 17. He sold tbe premises to tbe defendant, who continued and completed the erection of tbe improvements, for tbe same purposes. Tbe plant consisted of a press bouse, office, boiler and engine room, kilns and day sheds, which were so constructed tbat tbe whole was covered by one continuous roof, in order to go from one part to tbe other without exposing tbe dry clay to tbe elements; tbe part called tbe press *511 house was inclosed on all sides, was a frame building, two stories high with a gravel roof; the whole plant was used as one plant and the several parts were necessary to make up the whole plant, which would mot be a complete plant if any of the parts were omitted. After the defendant purchased the premises, it bought from the plaintiff 202,000 hard bricks (for $1,111) which were used in constructing the kilns, and also bought one six-mold pressed brick machine, weighing over 52,000 pounds, which was also necessary to complete the plant, and which was placed in the press-house on a rock and cement foundation, the flanges of the bed plate of the machine extending downward on the outside and inside of the rock foundation and were embedded in cement about four and a half inches thick, so that the machine was fastened solidly to the foundation so that it could not be removed without breaking the machine or the foundation; the press was connected with the boiler room by steam pipes and the necessary belting and shafting, and was also connected with the second story or hopper room, by belting and shafting and machinery for driving and conveying clay by means of an elevator; the dry or harvested clay was brought from the clay sheds to the hopper and carried into the machine by the elevators; the boiler house was constructed of brick and frame; the engine was partly in the press room and partly in the engine room; the whole plant, except the driveway and'the coal chute, was enclosed on all sides and was covered, by one roof, and all the parts were connected so that the manufacture of the bricks might be carried on in one building so as not to expose the clay to the elements while being manufactured. The contract price for the machine was $5,000, of which $2,000 was to be in stock of the defendant company, so that the balance due the plaintiff is $4,111, for which in due time a lien was filed.
When the defendant company purchased the property there was a mortgage on it, put there by the former owner. *512 After the plaintiff’s rights under the lien had become fixed the defendant gave a second mortgage on the property to Williams as trustee for the American Exchange Bank, and afterwards the company made an assignment for the benefit of creditors.
The court gave the following instructions at the instance of the plaintiff:
“That there is no evidence to show any fraud or fraudulent design or purpose on the part of plaintiff in the preparation and filing of its lien claim; therefore, if from the evidence the court believes and finds that plaintiff is not entitled to ,a mechanic’s lien for all of its claim, or that plaintiff is not entitled to such lien against all the property therein ' described, the court should, nevertheless, award to plaintiff a lien for such sum and to such extent as from the evidence the court may believe and find plaintiff is justly entitled to.”
The court refused the following instruction offered at the instance of the plaintiff:
“That if the court from the evidence believes the facts to be that defendant, Gratiot Brick & Quarry Company, acquired the lots which are in the petition and lien claim in this ' case described, for the purpose of erecting thereon a plant for the manufacture of brick by the dry process; that at the time when defendant so acquired said lots there was standing thereon in an unfinished condition a building designed to be used in the manufacture of brick; that thereafter said de^ fendant ordered from plaintiff the brick press mentioned in said petition, and also ordered from plaintiff the brick in said petition specified; that plaintiff delivered said brick to said defendant, and the same were at the instance of said defendant used in putting up necessary kilns for the completion of said plant; that plaintiff also brought to defendant’s said premises said press, and so affixed and built the same into the building aforesaid that th'e same became a part thereof; that there was also attached to said building a boiler and engine *513 room, and boiler, engine and machinery necessary to operate said plant, and that said press was at the instance of said defendant connected with said machinery; that conveyers or other appliances were also at the instanee_of said defendant placed in said premises, and that thereby the said kilns were' connected with said machinery and press, and that all of the erections pertaining to said plant were placed under one continuous and permanent roof, so that there would be no exposure to the elements of the machinery or material used in the manufacture of brick in said plant; and if the court also believes and finds that said connected buildings and erections, as above described, extended in part over or upon the several lots aforesaid, then the court should find that said'buildings, press, kilns, boiler, engine and machinery constitute one structure, and that the same and the lots of ground aforesaid are subject to a mechanic’s lien for the full balance due the plaintiff for the press aforesaid, and work and labor of plaintiff connected therewith, and for the brick so delivered to defendant by plaintiff; and the court will find that plaintiff is entitled to such lien provided that plaintiff has by the evidence proved-to the satisfaction of the court all other averments of said petition essential to the establishment of a mechanic’s lien.”
The court gave the following instructions at the instance of the defendants:
“1. The court declares the law to be that if plaintiff furnished, sold and delivered to defendant, the Gratiot Brick & Quarry Company, the brick mentioned in the first count in plaintiff’s petition under one contract; and if plaintiff furnished, sold and delivered to the said defendant, the press brick machinery mentioned in the second count in the petition under a separate and distinct contract, then these two matters form separate and distinct accounts, for which separate liens should be filed, and this action can not be maintained and a lien established as is herein sought to be maintained.
*514 “2. If the court sitting as a jury, believes and finds from tbe evidence, that the brick sued for in the first count of the petition were furnished to defendant, the Gratiot Brick & Quarry Company, under a separate and distinct contract to be used in the construction of brick kilns, and that the same or the greater portion thereof were so used; that said brick kilns were structures complete within themselves, resting and built on the ground, and not connected with or forming any part of any building, erection or improvement; then the court declares the law to be that the plaintiff is not entitled to any lien for and on account of such brick so furnished and used.”
“3. If the court, sitting as a jury, believes and finds from the evidence, that the press brick machine, mentioned in the second count of the petition, was bought by defendant, the Gratiot Brick & Quarry Company, from plaintiff, under contract, dated August 5, 1895, read in evidence, and that the same was placed and put up by said defendant in the one and two-story frame building, marked 'press room’ on the plat made by Von Borcke, read in evidence, then on the premises of said defendant; that the said machine was not used in the erection of said building, nor contemplated in the erection thereof, but said building was an old structure, or one that was already existing and standing on said property when defendant acquired the same; that said building was not put up or erected by defendant, but so being and existing on the ground was used and employed by defendant to house said . press brick machine; then the court declares the law to be that plaintiff is not entitled to maintain a lien for said machine against said building or the ground upon which the same is situated.”
A personal judgment was entered by the court in favor of the plaintiff on both counts in the amounts claimed against Gratiot Brick & Quarry Company, but denying plaintiff a lien.
After proper preliminary steps the plaintiff appealed to this court.
*515 I.
The first instruction given for defendant is erroneous. The brick and the press brick machine were not contracted for on the same day it is true, but they were bought and furnished as parts of one general improvement of the property. The brick was used in constructing the kilns, and the press brick machine was used in pressing the clay into bricks, which would be burned in the kilns. They were all necessary parts of one whole plant and were under a common roof, and the whole and all its parts were constructed at substantially the same time, and the business of making dry pressed brick could not be carried on until the whole plant was completed. They were all furnished to the owner of the property within the statutory period before the lien was filed. They must therefore be regarded as having been furnished under a single contract within the meaning of the mechanic’s lien law. [Page v. Bettes, 17 Mo. App. 366 ; Kearney v. Wurdeman, 33 Mo. App. 447 ; Kern v. Pfaff, 44 Mo. App. l. c. 35 ; Pulton Iron Works v. Mining Co., 80 Mo. 265 ; Grace v. Nesbitt, 109 Mo. 9.]
II.
The second instruction given for defendant should not have been given, because there is no evidence, adduced in the case to which it could apply. On the contrary the evidence is uncontradicted that the kilns are a part of the plant and are not separate structures, complete in themselves.
III.
The third instruction given for the defendant proceeds upon the idea that the building in which the press brick machine was placed was an old, existing, frame building, *516 which was simply used to house the machine, and therefore the plaintiff was not entitled to a lien for the machine.
In the determination of this case it is not necessary to decide what the true rule is as between a lienor and a tenant. This case is a controversy between the mechanic and the owner. Many of the cases cited by counsel are inapplicable because they arose between the mechanic and the tenant.
Phillips on Mechanic’s Liens (3 Ed.), sec. 177, says: “Fixtures, machinery, etc., when necessary to the original purposes of the' structure, and are erected with it, may become responsible to the lien, when they would not otherwise have been, without express enactment, .if put up independently. As between the owner and mechanic, everything put into and forming a part of a building, or machinery for manufacturing purposes, and essential to the manufactory, is a part of the freehold; as wheels of a mill, the stones and even the bolting cloth, a copper kettle or boiler in a brewhouse, when proved to be essential to the brewhouse, are subject to the mechanic’s lien law. So a cooking range, and a cotton gin placed in a gin house. So the engine by which a steam saw mill is propelled is part of the building. Likewise millstones and machinery put up for a mill, fastened by screws and bolts. Electric poles, wires, lamps, etc., are fixtures and part of the realty. In the case of Hutchins v. Masterson, 46 Texas 554, it is said: ‘The weight of the modern authorities establishes the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists in the united applications of the following tests: 1. Has there been a real or constructive annexation of the article in question to the realty? 2. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected ? 3. Whether or not it *was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold, this intention being inferable from the nature of the article, the *517 relation and situation of the parties interested, the policy of' the law in respect thereto, the mode of annexation; and purposes or use for which the annexation is made. And of these three tests preeminence is to he given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention.’ ”
Section 6705, R. S. 1889, provides: “Every mechanic- or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or-machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue1 of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this article, shall have for his work or labor-done or materials, fixtures, engine, boiler or machinery furnished, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre,” etc.
The intention of the law is to give a lien where the-machinery furnished is intended by the owner to become a part of the building, manufactory or plant, and it is immaterial whether this occurs when the building was originally-constructed or when the owner converts an existing building into a manufacturing plant. The intention of the owner is just as clearly expressed by his acts in the one case as in the-other, and his obligation to the person furnishing the machinery is the same in morals and in law in the one casé as in the other. Any other construction would be a denial of' the benefits intended to be conferred by the statute. There can be no reason for giving a lien for machinery furnished to and that becomes a part of a new building, and denying a lien where the machinery is furnished after the building is completed, but when it is converted from a store or residence into a manufacturing plant and the machinery is essential to- *518 its changed character and nse. Eor the statute intended to secure the person whose labor or materials or machinery goes into the building or erection and enhances the value of the land, and the same reason which would deny a lien for machinery put into an existing building, would also deny a lien for the labor or materials used in reconstructing a building. Moreover if this were the true rule, a merchant would be safe in selling an owner machinery for an original construction, but would not be safe in selling the same article to go into an existing building that the owner desired to convert into' a factory, although the intention of the owner in buying the machinery is the same in both instances.
Much of the confusion that is found in cases of this character arises from a failure to observe the intention of the owner, and in laying a stress, which the statute does not warrant, upon the character of the machinery that is put into the building.. Of course there is no lien on the house or land given by the statute for any kind of machinery that is simply stored in the house awaiting sale or for any temporary purpose, nor can there be a lien where a tenant puts in machinery under a lease which- reserves to him a right of removal, for in such cases the chattel never becomes part of the realty, but if the machinery is put into a building by the owner with the intention of making it a permanent part of the building, then the person furnishing the machinery is entitled to a lien on the building and it is then wholly immaterial when the machinery is so put in the building, whether at the time it was originally constructed or at any time afterwards.
The cases heretofore decided by this court, when read in the light of the facts before the court, will be found to be in harmony with what is here said.
In Graves v. Pierce, 53 Mo. 423, it appeared simply “that the said machinery is now in a building claimed by said Pierce and situated on a lot of ground containing about one acre,” etc. The machinery consisted of three sets of carding *519 machines. It did not appear that they were attached in any way to the building, and the court said, “Carding machines are not usually affixed to the freehold or realty, they are manufactured and sold as are all articles of merchandise, and are placed in a building for use, and braced or otherwise stayed, so as to hold them steady for use, and are taken down and removed to another building, when it becomes necessary by sale or otherwise, without injury to the building in which they are placed.” Of course the lien was denied the plaintiff on this showing.
In Thomas v. Davis, 16 Mo. 12, the machinery in question was a steam engine and accompanying apparatus, put in thé building by the owner, and the whole was intended and adapted for the business of lead smelting. The controversy arose between two mortgagees. The plaintiff’s mortgage described the land only, while that under which the defendant acquired title not only described the land but also specifically mentioned “furnaces, engines, boilers and machinery” situated on the land. Thus the question was squarely presented, for if the machinery had not become a part of the realty, the first mortgagee had no title, and the second mortgagee would have the better right because his mortgage covered not only the land but the chattels.
This court after saying that the rule as between mortgagor and mortgagee is the same as the rule between heir and executor said: “In Fisher v. Dixon, 12 Cl. & F. 312, cited by Mr. Hill, the House of Lords held that: ‘When the absolute owner of the land in fee, for the purpose of better using the land, erects upon and affixes to the freehold, certain machinery, such as is in use in making coal, and in mines, it will go to the heirs as part' of the real estate; and if the corpus of such machinery belongs to the heirs, all that belongs to the machinery, although more or less capable of being detached and being used in such detached estate, from it, must be considered as belonging to the heirs.’ In Mather v. Frazier, 2 *520 Kay and Johnson, 536, also cited by Mr. Hill, the Vice-Chancellor, Wood, held that: ‘Even in regard to manufacturers, all articles affixed to the freehold, whether by screws, solder or any other permanent means, or by being let into the soil, will descend to the heirs, or pass by conveyance of the land; that the rule of law by which fixtures are held less strictly, when erected for manufacturing purposes, has no application to fixtures erected by the owner of the land in fee.’ It is held in New York, that, as between mortgagor and mortgagee, whatever is annexed or affixed to the freehold, by being let into the soil, or annexed to it, or to some erection upon it, to be habitually used there, particularly for the pur-' pose of enjoying the realty, or some profit therefrom, is a part of the realty.” And the court further said: “Some of the exceptional cases seem to have made the question depend upon the character of the fastening, whether slight or otherwise. But this is a criterion of questionable character, not sustained by the weight of the decisions. More depends upon •the nature of the article and of its use as connected with the use of the freehold.” And again speaking of the difference between chattels put on the land by a tenant and those put thereon by the owner of the fee, the court said: “He” (the owner) “has absolute dominion over the property, both real •and personal, and his intention in making the annexation is to be determined by the consideration of the character of the annexation, and its appropriation, or adaptation to the use or purpose of that part of the realty with which it is connected.” Accordingly the court held the steam engine and apparatus to be a part of the realty and as such subject to the first mortgage.
This case is valuable for another reason. The house was a frame building which was suitable only for a covering for the machinery which was placed in it. The machinery was manifestly of much greater value than the house. The whole was intended and adapted for the business of lead *521 smelting. Beipg so intended and used the whole became realty. Much confusion has been caused by courts paying too much regard to the relative value of the house and of the machinery which is placed in the house. There can be no rule or principle deduced from such considerations. In nearly all manufacturing establishments the machinery costs many times as much as the house in which it is located, for palaces are not generally suitable as work shops. The intention of the owner is the first and best criterion, and the. adaptability of the machinery to the uses and purposes to be . subserved is the next best test, in determining all cases of this character.
Richardson v. Koch, 81 Mo. 264, was a case where the tenant put the machinery in a building on the land, which by the terms of the lease the tenant had a right to remove at any time, and it was properly held that by the terms of the contract the chattels never became a part of the realty, for there was disclosed a manifest intention that they should not become so, and moreover neither the building nor the machinery was put on the land by the owner, and of course the tenant’s act could not give the mechanic a lien on the owner’s land. The tenant could give the mechanic no greater right than he possessed himself. It is plain therefore that this case was properly decided. But there is some language in the opinion, about the house being on the land before the machinery was put in it, and about it being possible to separate the house and the machinery without damage to either, and about the building being more essential to the machinery than the machinery is to the house, and that the building simply served to house the machinery, which was not necessary to the decision of that, case and .which, as is hereinbefore shown, is not the true test in such cases, and is therefore not to be followed in other cases.
In Foundry & Machine Co. v. Cole, 130 Mo. 1, the machinery was put on the realty under a contract With a com *522 pany that did not have even a leasehold, but.that simply had the consent of the owner of the land to mine for zinc and lead, and it was properly held that the machinery was a mere trade or manufacturing fixture, which the owner of the land never acquired any title to, and of course the owner’s land could not be charged with a lien for such machinery.
The- putting a press brick machine in a residence or a church or an ordinary store would not entitle a person to a lien on the building and land therefor, because it would be plain that it was not adapted to use in such a building and hence there could be deduced no intention to make such a. machine a part of the house. But the contrary is true of a furnace put in such a building to keep it warm, and hence a lien would be allowed. [Goodin v. Elleardsville Hall Ass’n, 5 Mo. App. 289 ; Cooke v. McNeil, 49 Mo. App. 81.]
The converse of the proposition is equally true, Machinery put in a manufacturing plant that is plainly (or proved to be) suitable for the transaction of the business to be carried on in the house, entitles the person furnishing it to a lien and it is wholly immaterial what the relative value of the-house and the machinery may be, or whether they can be separated easily or not. A few cases will suffice to illustrate the rule: A copper kettle in a brewhouse (Gray v. Holdship, 17 Serg. & Rawle 413) ; a steam engine in a tannery (Oves v. Oglesby, 7 Watts (Pa.) 106); engine and boiler in a manufacturing plant (Shepard v. Blossom, 69 N. W. Rep. 221); gas compressors and engine in a brewery (Watts-Campbell Co. v. Yuengling, 125 N. Y. 1); engine-in a saw-mill (Morgan v. Arthurs & Co., 3 Watts. 140) ; wheels and boxes for use in a dry kiln (Meek v. Parker 63 Ark. 367) ; steel tanks forming part of a wood-vulcanizing plant (Haskin Wood-Vulcanizing Co. v. Cleveland Shipbuilding Co., 26 S. E. Rep. 878) ; bolting cloth in a flour mill (Heidegger v. Atlantic Mill Co., 16 Mo. App. 327).
*523 In the case at bar it is too plain to admit of debate and in fact is admitted that the intention of the owner was to construct and erect á dry press brick plant, and that the several parts and the machinery were all necessary to form one complete manufacturing establishment, which would not subserve the purposes intended if any one of the parts was omitted, and that the whole was manifestly adapted to those uses and purposes. The machinery, therefore, became a part of the realty ■and the buildings, erections and improvements on the realty became subject to a mechanic’s lien for the machinery furnished as the statute provides in such cases. The bricks went into the kilns, which formed a necessary part of the plant; and hence the plaintiff became entitled to a lien for them •also. The fact that the several parts were separate, except for the roof which covered them, makes no difference, for from the nature of the plant it was necessarily made up of parts, their sum going to make up the unit — the manufacturing plant. And the further fact that the parts were located upon different platted lots is likewise immaterial, for the ■owner had obliterated the lot lines, and by his use of the property had treated the whole as one lot, and the parts as ■one plant and therefore the law will treat it as such. [Meinholz v. Grodt, 4 Mo. App. 568 ; Kemper v. King, 11 Mo. App. 116 ; Wolfort v. St. Louis, 115 Mo. l. c. 144 ; Lindsay v. Gunning, 59 Conn. 296 ; Lauman’s Appeal, 8 Pa. 473 ; Bodley v. Denmead, 1 W. Va. 249 ; Edwards v. Derrickson, 28 N. J. Law 39 ; Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. St. 238 ; Salt Lake Lithographing Co. v. Ibex Mine & Smelting Co., 15 Utah 440 ; Premier Steel Co. v. McElwaine-Richards Co., 43 N. E. Rep. 876 ; Cary Hardware Co. v. McCarty, 50 Pac. Rep. 744.]
It. follows that the court should not have given the third instruction asked by the defendant, but should have given the instruction asked by the plaintiff and refused by the court, ■as under the facts here presented it stated the law correctly.
*524 The plaintiff is entitled to a lien as prayed, which will be subordinate to the first mortgage, and the lien will take priority over the second mortgage and over the rights of the assignee. Schulenburg v. Hayden, 146 Mo. 583.
The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment for the plaintiff establishing its mechanic’s lien, as above indicated.
All concur except Yalliant, J., not sitting.