600 P.2d 271

**Ken MARSH, d/b/a Rental Tools, Plaintiff-Appellant,**

v.

**James R. COLEMAN and Ronald E. Burkham and Marsha R. Burkham, his wife, and Carlsbad Savings & Loan Assn., Defendants-Appellees.**

**No. 11710.**

Supreme Court of New Mexico.

Aug. 30, 1979.

Reynolds, Bryan & Francoeur, Warren F. Reynolds, Hobbs, for plaintiff-appellant.

Shuler, Murphy & Schuler, James L. Schuler, M. Jane Shuler, Carlsbad, for defendants-appellees.

## OPINION

JOSEPH F. BACA, District Judge.

Plaintiff-appellant, M & M Rental Tools, a partnership composed of Ken and Florine Marsh, brought this action to foreclose a lien on real property owned by defendants-appellees, James R. Coleman, Ronald E. Burkham, and Marsha R. Burkham, and upon which defendant-appellee Carlsbad Savings & Loan Association had a mortgage. The alleged lien arose from unpaid rental fees on a water well drilling rig leased by Rental Tools to Sides Water Well Service, a water well drilling contractor, for use in drilling a well on defendant-appellee Coleman's property. After trial on the merits, the trial court held for defendants-appellees. Rental Tools appeals. We reverse.

On December 5, 1975, Rental Tools leased the water well drilling rig to Sides Water. At the time Sides Water leased the rig, and

during the time it used it on Coleman's property, Sides Water was not a licensed water well driller under § 72–12–13, N.M. S.A. 1978. The rig was returned to Rental Tools in April 1976. Shortly thereafter, Sides Water obtained a driller's license. On June 17, 1976, Rental Tools filed a claim of lien against Coleman's property for the rental value of the rig for a sixteen-week period. Subsequent to the filing of the claim of lien, Coleman conveyed the property to the Burkhams, and Carlsbad Savings & Loan recorded its mortgage on the property.

The trial court held that Rental Tools was not entitled to file a claim of lien for the rental charges because Sides Water was not a licensed driller at the time the drilling rig was leased and used on Coleman's property. The court also found that the claim of lien contained several fatal variances, which rendered it unenforceable. Rental Tools contends that these findings were erroneous. We agree.

### I.

Rental Tools' first point is that the trial court erred in holding that a lessor of a drilling rig could not file a claim of lien for the rental value of the rig, where the driller-lessee was unlicensed at the time the rig was used.

Section 60–13–30B, N.M.S.A. 1978, provides that

[a]ny contractor operating without a license *as required by the Construction Industries Licensing Act* shall have no right to file or claim any mechanic's lien as now provided by law. (Emphasis added.)

However, under § 60–13–3C(2), N.M.S.A. 1978 (Supp.1978), for purposes of the Construction Industries Licensing Act, §§ 60–13–1 to 57, N.M.S.A. 1978, a contractor is expressly defined not to include "any person who drills . . . any . . . water well . . . ." In addition, § 60–13–3C(1) states that a contractor does not include "any person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them

in the performance of, the work of a contractor."

As a water well driller, Sides Water was required to be licensed under § 72–12–13, not under the Construction Industries Licensing Act. Rental Tools, as a supplier of materials or supplies, which were not fabricated into or consumed in the work Sides Water performed, was also not required to be licensed under the Construction Industries Licensing Act. Thus, § 60–13–30B is inapplicable in this case.

Unlike the Construction Industries Licensing Act, the act pertaining to the licensing of water well drillers contains no provision which would prohibit an unlicensed water well driller or its supplier from filing a claim of lien against property on which drilling work is performed. The fact that in one licensing situation the Legislature has explicitly provided that non-licensed contractors may not file claims of lien, and in another licensing situation, has not enacted a similar prohibition, is an indication that the Legislature did not intend to preclude the filing of liens in the latter situation. *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525 (1976).

It should be noted that in a previous decision, this Court held that one who leased equipment to a contractor could not file a claim of lien for the rental value of that equipment. *Lembke Construction Co. v. J. D. Coggins Company,* 72 N.M. 259, 382 P.2d 983 (1963). *Cf. Albuquerque Foundry & Machine Works v. Stone,* 34 N.M. 540, 286 P. 157 (1930) (holding that an oil well driller could not file a claim of lien for the value of a drilling rig temporarily used on a job site). In 1965, apparently in response to the *Lembke* decision, the Mechanics' Lien Law was amended to provide that any person "providing or hauling equipment, tools or machinery" for the construction of any structure is entitled to a lien for the value of such services. N.M. Laws 1965, ch. 184, § 1. The right created by this amendment is not dependent upon, nor is it derivative from, the rights of the contractor or other person with whom the property owner dealt.

Therefore, the fact that Sides Water was an unlicensed water well driller has no effect on the right of Rental Tools under § 48–2–2, N.M.S.A. 1978, to file a claim of lien for the rig it provided to Sides Water for the drilling of a water well on Coleman's property. The trial court erred in holding that it did.

## II.

The second issue we address is whether the variances in the claim of lien between the allegations contained therein and the evidence produced at trial are fatal to its validity.

Section 48–2–6, N.M.S.A. 1978, provides that a claim of lien must state the demands of the party filing it, the name of the owner of the property, the name of the person by whom the party was employed or to whom he furnished materials, a description of the property sought to be charged with the lien, and a statement of the terms, time given and conditions of the party's contract. The claim of lien must be verified by the oath of the party "or some other person."

This Court has repeatedly held that only substantial compliance with the terms of this statute is required. *Weggs et al. v. Kreugel et al.*, 28 N.M. 24, 205 P. 730 (1922); *Lyons v. Howard & Destree*, 16 N.M. 327, 117 P. 842 (1911); *Minor v. Marshall*, 6 N.M. 194, 27 P. 481 (1891). In determining whether there has been substantial compliance, the purpose of the statutory requirements must be kept in mind, the primary object being "to give notice to subsequent purchasers and incumbrancers and inform the owner of the extent and nature of the lienor's claim." *Weggs, supra*, 28 N.M. at 27, 205 P. at 731.

Rental Tools' claim of lien stated that Rental Tools was "a business located in Lovington, New Mexico," which had leased a drilling rig to Sides Water from December 5, 1975 to April 24, 1976 for use on the property of Coleman. The claim of lien contained a detailed description of Coleman's property. Rental Tools alleged that it was due $5,263.44 "for labor and the contract price for the lease" of the rig.

The trial court found that the claim of lien was defective because it contained six fatal variances. First, the trial court found that the designation of Rental Tools as simply a business in Lovington was defective because the claim of lien should have stated that Rental Tools was a partnership.

■ There is no requirement under § 48–2–6 that the claim of lien contain a description of the type of entity that filed it. It is only necessary that the name of the claimant appear on the claim of lien, and courts have been liberal in upholding claims or statements in this respect. 57 C.J.S. *Mechanics' Liens* § 156 (1948). Defendants do not contend that the failure of the claim of lien to describe Rental Tools as a partnership prejudiced them in any way.

■ The second alleged variance is that the description of Coleman's property was not the exclusive property the drilling rig was to be used upon, but rather, the rig was to be used on several properties. This is not a variance. The uncontradicted evidence was that the rig was used solely on the property of Coleman during the period of time described on the claim of lien. The fact that this period of time might have been unreasonable in light of the work which was performed may be relevant to the proper amount of the lien. However, in the absence of fraud or bad faith, an overstatement of the amount due does not invalidate the claim of lien. 53 Am.Jur.2d *Mechanics' Liens* § 234 (1970). The court did not make a finding of fraud or bad faith.

■ The third alleged variance is that Rental Tools did not supply labor as alleged in the claim of lien. Rental Tools now concedes that no labor was supplied. However, the evidence showed that Rental Tools claimed $261 for transportation of the rig to and from Coleman's property. One of the partners in the Rental Tools partnership testified that he was not certain whether to classify the transportation charge as a labor or as a material item. Section 48–2–2 provides that a person may file a lien for labor *or* for providing or hauling equipment, tools or machinery. It does not require that the

claimant do both. At most, this alleged variance was an innocent misclassification, which defendants have failed to show has worked to their prejudice.

The fourth alleged variance is that sixteen weeks was an unreasonable period of time for the drilling of the well on Coleman's property, and indicated that the drilling rig was not used for the exclusive purpose of drilling a well on that property. Whether or not sixteen weeks was a reasonable time for which Rental Tools may be fully compensated is a question of damages, which is distinct from the issue of the validity of the claim of lien itself. As we noted above, an overstatement of the amount due does not invalidate a claim of lien, unless it results from fraud or bad faith on the part of the claimant. There is no allegation that Rental Tools' claim was fraudulent or was made in bad faith.

The fifth alleged variance is that the terms, time, and conditions of the alleged contract were in complete variance with the evidence. The evidence does not support this finding.

The final variance the court found was that Rental Tools' attorney verified the claim of lien without a showing that the attorney knew the facts as stated in the claim to be correct. The attorney signed the verification, stating that he had investigated the facts set forth in the claim of lien, and that they were true and correct to the best of his knowledge.

In *Lyons, supra,* this Court held that a verification stating that the matters set forth in the claim of lien were "true and correct, to the best of my knowledge, information, and belief" was a sufficient verification under the New Mexico Mechanics' Lien Law. The Court said:

> No particular form of verification is required by our statute, nor is it specifically required thereby that the verification shall be true to the knowledge of affiant.

16 N.M. at 331, 117 P. at 843.

The Court relied on cases construing verifications similar to the one in this case, including one in which an attorney signed a claim of lien based on his belief that the allegations contained therein were "just and true." *Finley v. West,* 51 Mo.App. 569 (1892). *See also Monarch Metal Weather Strip Co. v. Clynick,* 117 Cal.App. 270, 3 P.2d 593 (1931). Therefore, the trial court erred in holding that the verification of the claim of lien in this case was improper.

We are persuaded that none of the so-called variances were of such a nature that the property owner, and subsequent purchasers and incumbrancers, could be said to have had no notice from the claim of lien of the extent and nature of Rental Tools' claim.

Defendants contend that even if each individual variance is not fatal to the claim of lien, the cumulative effect of the six variances was highly prejudicial. However, defendants do not point to any evidence in the record which demonstrates the manner in which they have been prejudiced.

Therefore, the trial court erred in holding that Rental Tools' claim of lien was unenforceable. The judgment is reversed, and the cause is remanded for purposes of determining the amount to which Rental Tools is entitled.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.