BUSH CONSTRUCTION
MACHINERY, INC.,
Appellant,

v.

KANSAS CITY FACTORY OUTLETS, L.L.C. Stahl Construction Company, Heartland Corporation, Michigan National Bank and Michael G. O'Flaherty, Trustee for Michigan National Bank, Respondent.

No. WD 60217.

Missouri Court of Appeals,
Western District.

April 23, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Thomas D. Rodenberg, Blue Springs, MO, for appellant.

Gary V. Fulghum, Kansas City, MO, for respondent.

Before LOWENSTEIN, P.J., NEWTON and EDWIN H. SMITH, JJ.

HAROLD L. LOWENSTEIN, Judge.

Bush Construction Machinery, Inc. (Bush) filed its second appeal from the trial court's judgment dismissing its petition, which included a count for enforcement of a mechanic's lien against property in Odessa owned by the Kansas City Factory Outlets, L.L.C. (Respondents), for the nonpayment of equipment rental fees. This court dismissed Bush's first appeal for lack of jurisdiction because the trial court had neither addressed a count for quantum meruit nor had made an express determination that there was no reason for just delay under Rule 74.01(b). Because jurisdictional infirmities have been corrected, this court reviews the merits of the case.

**Factual and Procedural History**

Respondent Stahl Construction Company ("Stahl") was the general contractor hired to construct the Odessa Outlet Mall in Odessa, Mo. The appellant, Bush Construction ("Bush"), was an equipment supplier to one of Stahl's subcontractors, respondent, Heartland Construction ("Heartland"). Heartland had been hired by Stahl to do earthwork and utility work on the shopping mall project. In connection with that work, Heartland leased two pieces of equipment from Bush, a Caterpillar scraper and a Caterpillar track loader. Bush employees performed no labor on the site; Bush merely leased equipment to Heartland.

Heartland defaulted in the performance of its work and Stahl terminated the contract for earthwork and replaced Heartland with another earthwork subcontractor. Heartland, however, continued to do utility work, and completed such work by July 15, 1995, when the outlet mall had its grand opening.

Bush filed this action seeking a mechanic's lien for more than $30,000 on January 25, 1996, alleging that Heartland did not pay money owed Bush under the rental agreement. In denying Bush's petition for a mechanic's lien, the trial court ruled that Bush failed to prove that its equipment was used on the project within six months of filing its mechanic's lien suit. Further facts are set forth as necessary.

**Standard of Review**

This was a court-tried case. "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's judgment and disregard all contrary evidence." *Propes v. Griffith*, 25 S.W.3d 544, 547 (Mo.App.2000). This court gives considerable deference to the evidentiary and factual evaluations by the trial court; however, no such deference is given where the law has been erroneously applied. *Id.* "This court may only set aside the trial court's decision if firmly convinced that the judgment is wrong." *Karpierz v. Easley*, 31 S.W.3d 505, 508 (Mo.App.2000).

**Analysis**

Bush asserts two points on appeal. Bush argues first that the trial court mis-

applied the law by requiring Bush to prove that the machinery it leased to Heartland was "used" on the real estate based on the plain meaning of mechanic's lien statute, § 429.010.[1] In its second point, Bush argues that the trial court erred in finding that its mechanic's lien was not timely filed within six months after the indebtedness for the machinery had accrued pursuant to § 429.080.

By way of overview, the issue is whether the legislature in § 429.010, *infra*, contemplated providing a mechanic's lien to any person who *furnishes machinery* involved in construction. The parties framed the question instead in terms of when the statute of limitation commenced—i.e. did the statute of limitation commence when Bush retracted its machinery thereby no longer furnishing it? Did the statute of limitation commence when the project was completed? Did the statute of limitation commence when Bush's machinery was no longer used on the project? These questions cannot be resolved in this opinion because this court has identified a fatal flaw in Bush's case: the leased machinery was never lienable.

Missouri's lien statutes are among the oldest statutes in Missouri, and some sections contain substantially the same language as originally enacted. In particular, and most relevant to this case, is § 429.010. That section states, in pertinent part:

> Any person who shall do or perform any work or labor upon, or *furnish* ....
> *machinery* for any building, erection or improvements upon land, .... under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, ....
> upon complying with the provisions of § 429.010 to § 429.340, shall have for his

.... machinery .... furnished, .... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated. (Emphasis added.)

Bush's argument relies on the portion of this statute entitling a mechanic's lien to those who "furnish machinery." No party has questioned Bush's conclusion that it is entitled it to a lien because it leased machinery to a subcontractor. Instead, as noted *supra*, the parties focus on whether the six-month statute of limitation, found in § 429.080, bars recovery.

■ The resolution of this case, however, is determined instead by § 429.010, which delineates who is entitled to a lien, and not the statute of limitation. Mechanic's liens are creatures of statutes. *Coomes v. Slater Dev. Corp.*, 36 S.W.3d 412, 414–15 (Mo.App.2001). Mechanic's liens were unknown at common law or in equity. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 269 (Mo.App.1984). Therefore, this decision is governed purely by § 429.010 and legislative intent, as evinced through Missouri precedent.

■ Apparently no case in Missouri has dealt squarely with the issue of whether the cost of rental equipment as used on the land of a construction site is a lienable item. Other jurisdictions are split on the issue. R.Y. Liang, Annotation, *Charge for Use of Machinery, Tools, or Appliances used in Construction as Basis for Mechanic's Lien*, 3 A.L.R.3d 573 (1965); 53 AM.JUR.2D *Mechanic's Liens* § 99 (1996). The minority view is that the cost of rental equipment is lienable; those courts holding that view reason that equipment was necessary to completion of project. *See e.g. R.L. Harris, Inc. v. Cincinnati, New Orleans & Texas Pacific Ry. Co.*, 198 Tenn.

---

1. All statutory references are to RSMo 2000,     unless indicated otherwise.

339, 280 S.W.2d 800 (1955)(rental of heavy machinery was lienable because the given purpose of the rental contract, the use of the machinery, was "purchased" and thus "consumed").

Other courts have held that rental equipment is not lienable absent a statutory provision providing otherwise. As an overview, the rationales for the majority view are that the lessor of equipment or machinery does not perform labor that contributes to the improvement of real property and that the machinery used never becomes part of the property. In *Lembke Constr. Co. v. J.D. Coggins Co.*, 72 N.M. 259, 382 P.2d 983 (1963), the Supreme Court of New Mexico examined a fact pattern similar to the case at bar. In *Lembke,* a lessee of earth-moving machinery filed a mechanic's lien against the owner of a shopping center. As in the present case, a subcontractor involved in the construction leased machinery from Lembke but never paid the rental costs. The Court extensively examined New Mexico's mechanic's lien law and holdings from other jurisdictions and concluded that no lien existed or was intended by its legislature. In doing so, *Lembke* Court rejected the theories that machinery was lienable as labor and that the machinery was used up in the project, quoting *McAuliffe v. Jorgenson,* 107 Wis. 132, 82 N.W. 706, 707 (1900):

> Under no permissible theory can it be said that the plaintiff has furnished any 'materials' that entered into or became a component part of the [site.] Whatever right he has arises from the use of his machine. . . . The plaintiff did no manual labor, either by himself or his servants, towards the construction of the [site]. The machine was used by [the lessee] as though it was his own. . . . To permit this lien to stand and be enforced would be stretching the lien law beyond any reasonable limit.

The New Mexico Court then noted that any change in existing mechanic's lien law was a function of the legislature. In response, two years later the New Mexico legislature amended its mechanic's lien statute to provide for rental fees of leased equipment. *Marsh v. Coleman,* 93 N.M. 325, 600 P.2d 271, 273 (1979). A more recent case with similar, extensive reasoning is *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 979 P.2d 627 (1999)(analyzing split of authorities and holding that equipment lessors could not obtain mechanic's liens even though language of statute provided a lien for those who were "furnishing materials to be used in the construction"). *See also Logan Equip. Corp. v. Profile Constr. Co.*, 585 A.2d 73 (R.I.1991)(mere rental of excavation equipment does not serve as basis for mechanic's lien; even though lessor contributed to value of construction project, the "contribution of value . . . . is not what the statute requires"; further, equipment was neither totally depreciated by use nor incorporated into improvement); *Southeastern Steel Erectors, Inc. v. Inco, Inc.,* 108 N.C.App. 429, 424 S.E.2d 433 (Ct.App.1993)(exploring split of authorities and holding that rental agreement of crane was not furnishing of labor or materials and therefore not lienable; wording of statute indicated that "legislature contemplated something that is capable of becoming part of the real property").

Although apparently no Missouri case has considered whether *leased* machinery is lienable, in early cases involving this mechanic's lien statute, the Supreme Court of Missouri explained when machinery is lienable. In *Progress Press–Brick Machine Co. v. Gratiot Brick & Quarry Co.,* 151 Mo. 501, 52 S.W. 401, 402 (1899), the Court considered whether a lien was appropriate on a machine that was placed in

a building with the intent of making it a permanent part of the building. The building owner said that no lien was appropriate because the machine was installed after construction on the building was completed. *Id.* at 403. The Court rejected that argument, stating:

> The intention of the law is to give a lien where the machinery furnished is intended by the owner to become a part of the building, manufactory, or plant; and it is immaterial whether this occurs when the building was originally constructed, or when the owner converts an existing building into a manufacturing plant. *Id.* at 404.

That principle was affirmed in *Springfield Foundry & Machine Co. v. Cole*, 130 Mo. 1, 31 S.W. 922 (1895), where a mining company bought from seller machinery to erect a plant. The mining company took out a loan from a bank to purchase machinery but then never paid seller. *Id.* at 922. When the mining company defaulted on the loan, the bank replevied the machinery. *Id.* Prior to the sale of the machinery, seller filed a mechanic's lien, theorizing that the machinery had become part of the property. *Id.* The Supreme Court of Missouri held that the meaning behind the mechanic's lien statute:

> indicates that that machinery must be such as is used in the erection of a building, and which will, when placed in the building, erection or improvement on the land, become a fixture, and become a part of the realty, or at least such as is necessary in the erection of the improvement to be made.

*Id.* at 924 (quoting *Graves v. Pierce*, 53 Mo. 423, 428–29 (Mo.1873)). Further, because the machinery in that case was not placed in the building, it:

> became no part of the realty, and no improvement thereon; and inasmuch as the machinery placed in said building

was not placed therein in the erection of said building or as an improvement thereto, but was placed there solely for mining . . . ., it formed no part of said building, but remained personalty, and plaintiff was not entitled to a mechanic's lien.

*Id.* See also *Banner Iron Works v. Aetna Iron Works*, 143 Mo.App. 1, 122 S.W. 762, 764 (1909)(no mechanic's lien where items could be removed from one building to another; "principal criterion is the intention with which the owner of the land or building put the material into the building or on the land—whether his purpose was to make it permanently a part of the land or tenement.").

Such a result, however, is distinguished from a fact pattern where labor *and* machinery are furnished on a construction site. *See, e.g. Marsh v. Allright Mo., Inc.*, 568 S.W.2d 577 (Mo.App.1978)(lien permissible under § 429.015.3 where contractor used its machinery and labor in demolition); 53 Am.Jur. 2d *Mechanic's Liens* § 100 (1996). This result is distinguishable too from cases involving the materialman's liens and the "every stick" rule. *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 932 (Mo.App.1992)(Missouri follows the "every stick" rule, which lessens onerous burden on material supplier of proving that every lienable item entered into the construction); *Oliver L. Taetz, Inc. v. Groff*, 363 Mo. 825, 253 S.W.2d 824 (1953)(materials used in construction need not have gone into the structure).

Early Missouri cases, decided fairly soon after the original enactment of Missouri's mechanic's lien statute, indicate a conclusion that the legislature simply did not contemplate a situation where rental equipment might be used in the construction of a building. The focus on the term "furnish machinery" concerned machinery

that became a permanent part of the construction. *See Progress Press–Brick,* 52 S.W. at 404, *Springfield Foundry,* 31 S.W. at 924, *and Banner Iron Works,* 122 S.W. at 764.

The language of the statute and interpretive Missouri case law, as well as guidance from other jurisdictions, lead to the conclusion that a lien for the cost of rental machinery was simply inappropriate. In so concluding, this court is mindful in Missouri, as in other jurisdictions, the stated public policy, as old as the mechanic's liens themselves, favors construing mechanic's liens in favor of the one seeking the lien. *Peerless Supply Co. v. Indus. Plumbing & Heating Co.,* 460 S.W.2d 651, 657–58 (Mo.1970)("it has been the policy of our Legislature to construct our mechanics' lien statutes upon broad principles of right and justice and this Court has construed them liberally to carry out their remedial purposes"). However, courts interpret lien statutes broadly only after it is clear that a mechanic's lien is appropriate. This court cannot interpret a mechanic's lien broadly where there is no lien to be found. *Southeastern Steel,* 424 S.E.2d at 436 (no lien statute "should be construed so liberally as to give it a meaning never intended by the legislature.").

The National Conference of Commissioners on Uniform State Laws formulated the Uniform *Construction Lien Act,* which advocates a construction lien arising for furnishing tools, appliances, or machinery that are used in the course of construction. If rented, "the lien is for the reasonable rental value for the period of actual use and any reasonable periods of nonuse taken into account in the rental contract." Uniform Construction Lien Act at § 204(c)(1) (1987).[2] Cases such as *Lembke* and *Great Plains, supra,* indicate that in today's market, public policy favors allowing a lien for providers of machinery, as the New Mexico legislature did in response to *Lembke.*

The judgment of the trial court reached the correct result. *Beck v. Shrum,* 18 S.W.3d 8, 10 (Mo.App.2000)(appellate court is concerned primarily with reaching a correct result and need not agree with the reasoning of the trial court to affirm). This court urges the legislature to consider whether a lien for lessors of machinery is desirable. If the legislature does amend the statute, then it is further urged to consider when the statute of limitation would commence to run in such a situation (i.e. when the equipment last used, when retrieved by the lessor, etc.) in order to prevent the potential questions that the fact pattern here raises.

The judgment is affirmed.

All concur.

---

2.  http://www.law.upenn.edu/bll/ulc/fnact99/   ucla87.pdf.