**MASON C. DAY EXCAVATING, INC., Plaintiff,**

v.

**CROWDER CONSTRUCTION CO., INC. and the Aetna Casualty & Surety Co., Defendants.**

**No. C–C–87–084–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 9, 1987.

G. Gray Wilson, Petree, Stockton & Robinson, Winston–Salem, N.C., for plaintiff.

Robert L. Burchette, Miller, Johnston, Taylor & Allison, Charlotte, N.C., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT D. POTTER, Chief Judge.

**THIS MATTER** is before the Court following a bench trial held on November 23, 1987. The main parties are a contractor, Crowder Construction Co., Inc., and a subcontractor, Mason C. Day Excavating, Inc. The subcontractor sued the contractor for monies due and owing under a subcontract for grading and excavation work. The contractor counterclaimed for a declaratory judgment establishing the rights and liabilities of the parties, and for a set-off of certain expenses.

## I. FINDINGS OF FACT

Based upon the evidence presented at trial and the record in this case, the Court makes the following findings of fact:

(1) Plaintiff is Mason C. Day Excavating, Inc. ("Mason Day"), a Virginia corporation with its principal place of business in Virginia. Plaintiff is a grading contractor. Defendant Crowder Construction Co., Inc. ("Crowder") is a North Carolina company with its principal place of business in North Carolina. Defendant Crowder is a construction company. The Aetna Casualty & Surety Co. ("Aetna") is a Connecticut corporation. Defendant Aetna is an insurance company which issues, among other types of policies, performance and payment bonds for construction companies.

(2) Defendant Crowder was awarded the prime contract for the state highway project known as the "East–West Durham Freeway" in Durham County, N.C. Crowder subcontracted the clearing and grading portion of the contract to Plaintiff Mason Day. The subcontract incorporated the contract between Crowder and the state in its entirety. Defendant Aetna provided Crowder with a payment bond to secure payment by Crowder to its subcontractors. Plaintiff Mason Day sued Aetna on the theory that Mason Day is a third-party beneficiary of the Aetna–Crowder payment bond.

(3) The subcontract between Mason Day and Crowder required that Mason Day provide Crowder with a performance bond to secure performance of the subcontracted work. Mason Day began work on the project in September, 1986, without obtaining a performance bond. Although Mason Day assured Crowder that a performance bond was imminent, Mason Day was never able to obtain a bond. Accordingly, Crowder terminated the subcontract, pursuant to its terms, on Oct. 17, 1986. Termination is governed by Article 8 of the subcontract, which reads:

> Should the Subcontractor at any time ... fail in the performance of any of the agreements herein contained, ... the Contractor may, at his option, terminate the employment of the Subcontractor for the said work, and shall have the right to enter upon the premises and take possession, for the purpose of completing the work included under this Subcontract, of all the materials, tools and appliances thereon, and may employ any other person or persons to finish the work and provide the materials therefor; and in case of such discontinuance of the employment by the said Contractor, said Subcontractor shall not be entitled to receive any further payments under this Subcontract until the work shall be wholly finished, at which time, if such expenses shall exceed the unpaid balance, the Subcontractor shall pay the difference to the Contractor, but if the unpaid balance of the amount to be paid under this Subcontract exceeds the expenses incurred by the Contractor in finishing the work, such excess shall be used first to pay the Subcontractor for his materials and equipment so used and any amount thereafter remaining shall be apportioned between the Contractor and the Subcontractor in ratio to the percentage of work completed by each party. The expense incurred by the Contractor, as herein provided, either for furnishing materials or for finishing the work, and any damages incurred by such [subcontractor's] default shall be cha[r]geable to, and paid by, said Subcontractor....

(4) Prior to termination, Mason Day performed certain work on the project. The parties filed a stipulation delineating the work performed by Mason Day and the value thereof, as follows:

| | |
|---|---|
| Clearing and grubbing | $ 54,450.00 |
| Unclassified excavation | 46,355.40 |
| Borrow excavation | 326,927.00 |
| Drainage ditch excavation | 4,625.50 |
| Cleaning out silt basins | 97.00 |
| 54–inch perforated CS pipe elbow | 737.42 |
| 54–inch CS pipe culvert | 932.68 |
| Erosion control stone class B | 972.61 |
| TOTAL: | $435,097.61 |

Crowder does not contend that the work performed by Mason Day was substandard.

(5) The DOT has paid Crowder $412,-894.63 for work done by Mason Day. Crowder already has advanced $147,053.53

to Mason Day, leaving a net sum of $288,044.08 claimed by Mason Day to be due and owing for work previously performed. Crowder opened an escrow account into which it deposited all sums received by it for Mason Day's work. Crowder has withdrawn sums from the account to pay expenses it contends are reasonably related to its termination of Mason Day and completion of the subcontract work.

(6) After terminating the Mason Day contract, Crowder sought a replacement grading and excavating contractor. Time was of the essence in this search, so that Crowder could meet the state deadlines for completing portions of the work. Crowder reviewed the bid from the construction company which had submitted the next lowest bid on the entire subcontract during the initial bidding for the project contract. (The lowest bid was the Mason Day bid.) Crowder also solicited quotes on the "take-over price"—the price to finish the grading and excavation—from two companies with which it was familiar. After determining that the quote from S.T. Wooten Construction Co. ("Wooten") was the lowest of the three, Crowder contracted with Wooten for the completion of the grading and excavating work.

(7) Crowder claims that it was required to pay Wooten $181,995.59 more than it would have cost Crowder had Mason Day been able to perform the subcontract. Crowder claims that it is entitled to set off this sum against any payment due to Mason Day. Crowder also claims set-offs for the following expenses attendant upon Mason Day's termination:

| | |
|---|---:|
| Duke Power | $ 84.20 |
| Damage to equipment | 400.00 |
| Robert Akers | 25.00 |
| Crowder labor and equipment | 5,727.44 |
| Chandler Concrete | 162.86 |
| McCaskill Welding | 25.00 |
| Check printing charges | 39.90 |
| West Durham Lumber | 153.20 |
| Crowder labor | 504.30 |
| Crowder legal fees | 14,866.48 |
| Potential liability to Harry Curry | 40,099.20 |
| Estimated deduction for borrow excavation underrun | 326,927.00 |
| TOTAL: | $389,014.58 |

| | |
|---|---:|
| PLUS EXCESS COST OF WOOTEN CONTRACT: | $181,995.59 |
| TOTAL CLAIMED SET-OFF: | $571,010.17 |

(8) The item labelled "estimated deduction for borrow excavation underrun" results from the state's determination that the amount of "borrow excavation"—fill dirt brought from other sites—needed on the project had been seriously overestimated at the project's outset. As a result, the large amounts of borrowed fill dirt hauled from other sites will not be used on the project. Under the terms of the contract between the DOT and Crowder, the DOT can seek reimbursement from Crowder for sums advanced Crowder (through regular partial payments) for such borrow excavation. The contract also provides for methods of appealing the state's decision on underruns, so that it is possible that the exact figure to be charged Crowder for excess borrow excavation will not be known for months, perhaps years, after the entire project is finished.

(9) The amounts listed for "Robert Akers," "Crowder labor and equipment," "Chandler Concrete," and "McCaskill Welding" related to the repair of a pipe placed in a pipe basin by Mason Day. The damage to the pipe was discovered some time after Crowder terminated Mason Day. The cause of the pipe's failure was unknown, as was the date of the damage.

(10) The amounts listed for "West Durham Lumber," and "Crowder Labor" were not explained anywhere in the record.

(11) The expense labelled "Potential liability to Harry Curry" has its origin in a letter to Crowder from Mr. Curry, an independent truck owner hired by Mason Day to haul dirt at the project, stating that he felt that the independent truck drivers were due an additional payment of $0.60 per cubic yard for the 66,837 yards of dirt hauled. Crowder disputes Curry's claim, and those concerned have reached no final resolution of the matter.

(12) The grading and excavation work subcontracted to Mason Day, and taken over by Wooten, will not be wholly completed until approximately September of 1988.

## II. ISSUES

A. Is Mason Day entitled to immediate payment for the work it performed, or must it wait until the entire contract is finished?

B. Was there an oral contract between the parties providing that Crowder would pay Mason Day a $72,175.00 mobilization fee?

C. What expenses of completing the subcontract may Crowder set off against the amount due Mason Day for work performed?

D. May Crowder pass on to Mason Day the state's backcharge for borrow excavation underrun?

## III. CONCLUSIONS OF LAW

### A. *Preliminary Conclusions*

The Court finds that it has jurisdiction over this action by virtue of 28 U.S.C. § 1332, because the plaintiff is a citizen of a state other than those of which defendants are citizens, and the amount in controversy exceeds $10,000. North Carolina law therefore governs the substantive matters in this case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Neither venue nor personal jurisdiction has been challenged.

The Court also concludes that Crowder acted within its rights under the subcontract in terminating Mason Day for failure to provide bond. The rights and duties of the parties upon termination of the subcontract are governed by Article 8.

### B. *Issue A: Immediate or Delayed Payment*

Plaintiff Mason Day contends that it is entitled to immediate payment for the work it performed on the site, notwithstanding the contract provision (Article 8, quoted above) which Defendant claims provides otherwise. Plaintiff argues that the contract is governed by the North Carolina Payment and Performance Bond Act (the Act), N.C.Gen.Stat. § 44A–25 *et seq.* Under N.C.Gen.Stat. § 44A–30(b), the provisions of the Act are presumed conclusively to have been written into every payment and performance bond. Plaintiff urges that the Act provides that, regardless of the terms of the subcontract between the contractor and the subcontractor, the contractor's surety (here, Aetna) must pay the subcontractor within 90 days of the date on which the subcontractor last performed work for which the subcontractor is claiming payment. Plaintiff claims that § 44A–26(a)(2) renders any delayed payment agreements, such as the one in Article 8, ineffective.

Defendant contends that Article 8 of the subcontract expressly provides that, upon termination, the "Subcontractor shall not be entitled to receive any further payments under this Subcontract until the work shall be wholly finished." Defendant argues that this provision stands on its own.

The code sections on which Plaintiff relies read as follows:

### § 44A–26. Bonds required.

(a) When the total amount of construction contracts awarded for any one project exceeds thirty thousand dollars ($30,000) a performance and payment bond as set forth in (1) and (2) is required by the contracting body from any contractor with a contract more than fifteen thousand dollars ($15,000). In the discretion of the contracting body, a performance and payment bond may be required on any construction contract as follows:

. . . . .

(2) A payment bond in the amount of one hundred percent (100%) of the construction contract amount, conditioned upon the prompt payment for all labor or materials for which a contractor or subcontractor is liable. The payment bond shall be solely for the protection of the persons furnishing materials or performing labor for which a contractor or subcontractor is liable.

. . . . .

### § 44A–27. Actions on payment bonds; service of notice.

(a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished materials in the prosecution of the work required

by any contract for which a payment bond has been given pursuant to the provisions of this Article, and who has not been paid in full therefor before the expiration of 90 days after the day on which the claimant performed the last such labor or furnished the last such materials for which he claims payment, may bring an action on such payment bond in his own name, to recover any amount due him for such labor or materials and may prosecute such action to final judgment and have execution on the judgment.

Clearly, the Act does not explicitly provide that an agreement for delayed payment after termination of the subcontract, such as that contained in Article 8 of the subcontract, is void. Plaintiff points to the phrase "prompt payment" in § 44A–26(a)(2), and the 90–day grace period in § 44A–27(a), to support its contention that the Act implicitly bars such agreements.

The North Carolina Supreme Court has stated that "the obligation of a bond must be read in conjunction with the contract which the bond was given to secure. Further, the extent of the surety's obligations are ordinarily measured by the terms of the principal's agreement." *Interstate Equipment Co. v. Smith,* 292 N.C. 592, 234 S.E.2d 599, 601 (1977), citing *Overman v. Indemnity Co.,* 199 N.C. 736, 155 S.E. 730 (1930). "Accordingly, this Court should construe the surety's liability in conjunction with the contract underlying the bond." *Id.*

■ Although *Interstate Equipment* concerned a surety's claim that it was not bound by the subcontract language obligating the contractor to pay for wear and tear to machinery, the principle that the surety is bound by the underlying contract should support its corollary: that the subcontractor is bound by the subcontract language when dealing with the surety. Otherwise, the relationship between the surety and the principal is fundamentally altered.

■ Article 8 is clear: the contractor does not owe the subcontractor any more money until "the work" is completed.

"The work" refers to the work which the subcontractor agreed to perform, *i.e.,* the grading and excavating work. (*See* use of the phrase "the work" throughout Article 8.) Under the subcontract, then, Crowder is not obligated to pay Mason Day for the work it performed until the grading and excavating work on the project is completed. It is only then that Mason Day will be entitled to any sums remaining due. This construction of the subcontract allows the Contractor to receive partial payment for the work from the state, and to assess fully the damages caused by the subcontractor's breach, before paying the terminated subcontractor.

■ Since Crowder is not liable to Mason Day for any sums remaining due until the grading and excavation work on the project is wholly finished, the surety, Aetna, is not liable until and unless Crowder refuses to pay at that time. Once Crowder's liability is no longer dormant, Mason Day may seek payment from Crowder and, if necessary, from Aetna.

C. *Issue B: Oral Contract*

Mason Day also claims that Crowder orally agreed to pay to Mason Day a $72,-175.00 mobilization fee. In this connection, Mason Day claims that the written contract between the parties was only a partial integration of their entire agreement. It claims that, but for the mobilization fee agreement, Mason Day never would have signed the subcontract.

The written subcontract does not contain a merger clause. Mason Day's bid for the subcontract, submitted to Crowder by telephone, did not contain a mobilization fee. Testimony presented by Mason Day indicated that a Mason Day representative telephoned Crowder immediately upon learning of the "mistake." While the representative contended that, as a result of several telephone calls among the parties, the subcontract was altered to include a mobilization fee, Mason Day's own correspondence indicates otherwise. In a letter dated August 22, 1986, and included as Defendant's Ex-

hibit 10, Mason Day's Assistant Secretary & Engineer stated:

> We are somewhat mystified about the lack of money in mobilization for our contract. I do remember quoting the young lady mobilization along with the other items, the morning of the letting. *We would request* that you advance us $72,175.00 to cover our cost of mobilizing. This would be $0.10/C.Y. on 721,750 C.Y. of unclassified excavation, and would make our price to you $2.00/C.Y. for 721,750 C.Y. of unclassified excavation.

Defendant's Exhibit 10 (emphasis added). Mason Day admits that it received no response to this letter.

 The letter clearly shows that no contract, written or oral, was ever reached concerning the mobilization fee. While Mason Day may have intended to include the fee in its bid, the fee was not included in the bid that was made a part of the subcontract. Accordingly, Mason Day cannot recover any amount for "mobilization."

### D. *Issue C: Crowder Expenses*

Crowder asserted its claimed set-off as a counterclaim. As a result, Crowder has the burden of proving that it is entitled to set off the claimed amounts against the amount it owes Mason Day. *Durham Lumber Co. v. Wrenn–Wilson Construction Co.*, 249 N.C. 680, 685, 107 S.E.2d 538 (1959) ("Under the pleadings and admitted facts, when defendant elected to allege and to prosecute its counterclaim ..., it thereby assumed the burden of proof with reference thereto for all purposes.").

Crowder's claimed set-off is listed in Defendant's Exhibit 25, and is summarized by the Court above. The claimed expenses can be divided into four categories: (1) excess of Wooten subcontract price over Mason Day subcontract price; (2) cost of repairing broken pipe and other expenses; (3) potential future liabilities; and (4) legal fees.

### 1. Wooten subcontract expense

Article 8 of the Subcontract provides that, in the event of a termination of the Subcontract, the Contractor

may employ any other person or persons to finish the work and provide the materials therefor; .... The expense incurred by the Contractor, as herein provided, either for furnishing materials or for finishing the work, and any damages incurred by such [subcontractor's] default shall be cha[r]geable to, and paid by, said Subcontractor....

Mason Day contends, despite the subcontract's language allowing Crowder to employ "any person" to complete the work, that Crowder had a duty to mitigate its damages by taking bids on the completion work and selecting the lowest bidder. Mason Day asserts that the excess cost of the completion contract over the Mason Day subcontract should not be recoverable, because Crowder failed to take bids thereon. Mason Day also argues that Crowder's recovery is limited to its reasonable expenses incurred in connection with completing the subcontract work, and that any contract entered into without taking bids is *per se* unreasonable.

Crowder asserts that the taking of bids would have been unreasonable in the circumstances, given the time constraints, the desirability of employing a contractor who was familiar with the project, and the existence of "bids" in the form of those submitted to Crowder during the initial bidding of the project. Crowder's evidence revealed that the Wooten price was the lowest of the three estimates Crowder reviewed.

 Mason Day's assertion that Crowder may recover only its reasonable expenses comports with general contract law. Crowder cannot contend seriously that the words "any person" allow Crowder to employ a substitute subcontractor at a greatly inflated expense. Nonetheless, the words "any person" must have *some* meaning. There was no evidence to support Mason Day's assertion that Crowder and Wooten fraudulently inflated the completion contract price. The Court finds that Crowder acted reasonably under the circumstances, and that it is entitled to set off the excess

of the Wooten contract price over the Mason Day contract price against the amount owed to Mason Day.

### 2. Repairs to broken pipe and other expenses

Crowder claims an expense of $5940.30 for repairs to a pipe which it contends were necessitated either by Mason Day's faulty installation of the pipe, or by Mason Day's failure to maintain the pipe because of Mason Day's termination. Crowder's witnesses, however, could not state when the damage to the pipe occurred, only that they discovered the damage some time after Mason Day had left the site. Neither could the witnesses state the reason for the pipe's failure. The only evidence on that issue was one witness's conclusion that, had the pipe been properly installed, it would not have broken.

■ Under the subcontract, Mason Day is liable only for expenses related to its termination or to its faulty performance of the subcontract. The Court finds that Crowder failed to carry its burden of proof that the expenses of repairing the pipe were related to Mason Day's faulty performance or to termination of the subcontract. Accordingly, Crowder may not set off these expenses against the amount owed to Mason Day.

The same fate must befall Crowder's claimed expenses for charges from "West Durham Lumber" ($153.20) and for "Crowder Labor" ($504.30). Crowder offered no explanation whatsoever for these charges.

■ The charge for check printing ($39.90) arose from Crowder's opening of a bank account into which it placed all sums paid to it by the state for work performed by Mason Day. Crowder wrote itself checks out of the account for the expenses it claimed it could set off against its debt to Mason Day. The charge from Duke Power ($84.20) was for "temporary service hook-up office trailer," (Defendant's Exhibit 22) necessitated by the subcontract termination. Finally, Defendants sought $400.00 for equipment damaged by Mason Day. These three charges were sufficiently substantiated (though just barely) to allow Crowder to recover them in set-off.

### 3. Potential future liabilities

[8] Crowder attempts to set off an amount allegedly claimed by Harry Curry, an alleged subcontractor of Mason Day, for work performed for which Curry claims he has not been paid. Crowder admitted that both the amount and Curry's entitlement to payment is in dispute. Further, Crowder failed to offer any evidence linking Curry's claim to Mason Day. The Court finds that this item of set-off is far too speculative to be recovered.

### 4. Attorney's fees

■ Crowder has not explained fully the bases for the $14,866.48 in "attorney fees" it claims. If the fees claimed relate to the litigation between the parties, then Crowder may not recover them. "[T]he general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Stillwell Enterprises v. Interstate Equipment Co.*, 300 N.C. 286, 266 S.E.2d 812, 814 (1980). Defendant has pointed to no such statute allowing it to recover attorney fees, and Plaintiff cites a North Carolina Court of Appeals case which asserts that no such statute exists. *Yeargin Construction Co. v. Futren Development Corp.*, 29 N.C.App. 731, 225 S.E.2d 623, *cert. denied*, 290 N.C. 660, 228 S.E.2d 459 (1976). Since Defendant bore the burden of establishing its entitlement to attorney's fees, it may not recover them.

### D. *Set-off for Borrow Excavation Underrun*

Plaintiff's argument concerning Crowder's attempt to pass on to Mason Day the DOT's claim for reimbursement on the excess borrow excavation is in two parts: (a) no contract provision so states; and (b) Crowder's claim is speculative.

The provision allowing the DOT to backcharge Crowder for excess borrow excavation appears in the "Plans and specifications furnished by NCDOT" to Crowder as

part of Crowder's contract with the state. Article 2 of the subcontract between Mason Day and Crowder refers to these "Plans and specifications" as the "Contract Documents." Also in Article 2, the subcontract incorporates by reference "all the plans, drawings and specifications prepared by [the architect or engineer designated by the state] ... for the entire work" and binds Mason Day to "any and all parts of said plans and specifications insofar as they relate to any part or in any way to the work undertaken herein." Thus, the subcontract documents themselves state that the contract between Crowder and the state is incorporated into the subcontract.

■ All of Defendant's witnesses stated that the general practice in state highway construction contracting is that the subcontractors are liable to the general contractor as the general contractor is liable to the state. Thus, since the contract between Crowder and the state allows the state to seek reimbursement from Crowder for amounts paid Crowder for borrow excavation later found to be unnecessary, so may Crowder turn to Mason Day for reimbursement of amounts paid to Mason Day for excess borrow excavation. While the contract documents could have stated this pass-through liability more clearly, the Court finds this construction tenable and supported by the weight of the evidence. Crowder therefore may pass through to Mason Day Crowder's liability to the state for excess borrow excavation for which Crowder has paid Mason Day.

The testimony also indicated, however, that it could be years before the amount of Crowder's liability to the state for excess borrow excavation is finally determined. To hold Mason Day liable to Crowder for such sums before such sums are definitively determined would be grossly unfair. The Court therefore finds that, until the amount of the borrow excavation underrun is finally set, without right of appeal by either party, Crowder may not recover any sums from Mason Day for such underrun. Once the amount of the underrun is so determined, Crowder may recover from Mason Day so much of such amount as Crowder has paid Mason Day for such excavation.

## IV. SUMMARY

In brief, the findings and conclusions result in Mason Day's entitlement to a payment of $106,048.49 ($288,044.08—$181,995.59) for the work it performed on the subcontract prior to termination. Against this amount, Crowder may set off $524.10 ($84.20 + $400.00 + $39.90), resulting in a total recovery by Mason Day of $105,524.39. Mason Day is not entitled to this amount, however, until "the [subcontract] work has been wholly performed," meaning when Wooten has completed the grading and excavating on the site, and it has been accepted by the state.

When the final determination has been made of the amount the state will backcharge for excess borrow excavation, Crowder will be entitled to recover of Mason Day the amount of such excavation for which it has paid Mason Day.

Judgment will be entered in accordance herewith.

## JUDGMENT

**THIS MATTER** is before the Court following a bench trial. The Court rendered findings of fact and conclusions of law based upon the evidence of record, and filed same contemporaneously herewith. This Judgment is entered in accordance with those findings and conclusions.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that:

(1) Plaintiff shall have and recover from Defendant Crowder in the sum of $106,048.49, plus interest thereon at the rate of 6.93% per annum from the date of this Judgment until paid.

(2) Defendant Crowder shall have and recover the sum of $524.10 from Plaintiff, plus interest thereon at the rate of 6.93% per annum from the date of this Judgment until paid.

(3) Execution of the Judgment against Defendant Crowder and against Plaintiff will be *STAYED* until both of the following conditions have been met; or

until December 31, 1989, whichever occurs first:

(a) the grading and excavating on the subject highway project has been wholly completed;

(b) the State's backcharge for borrow excavation has been finally determined without right of appeal by any party.

(4) Within thirty (30) days of the date of the Judgment, Defendant Crowder shall post with the Court a bond with corporate surety satisfactory to the Court in an amount not less than one and one fourth (1¼) times the Judgment of $106,048.49, payable to Plaintiff on Defendant Crowder's failure to pay the Judgment plus interest in full at such time as both conditions in Paragraphs 3(a) and 3(b) above have been satisfied; or in any event on December 31, 1989, whichever occurs first.

(5) Defendant Crowder shall have and recover from Plaintiff on Defendant Crowder's counterclaim for the State's backcharge for borrow excavation such amount as has been finally determined without right of appeal by any party, which amount, if any, together with the sum of $524.10 plus interest will be charged against and deducted from any sums in the possession of Defendant Crowder and due and owing Plaintiff by Defendant Crowder under this Judgment.

(6) The Clerk enter Judgment in favor of Defendant Aetna on Plaintiff's Complaint against Aetna; and

(7) Each party shall bear its own costs in the premises.